EZRA BRACKETT
*against*
The STATE of VERMONT.

Before the act defining the duties of Grand Jurors, passed October 27th, 1801, a town grand juror could not prefer a complaint under his official oath for the breach of any law excepting the sabbath act, or for the apprehension of the persons and tools of counterfeiters.

Form of a writ of *certiorari* directed to the clerk of a County Court, to certify the record in case of error and diminution alleged, with the form of the clerk's return thereon.

IN ERROR. This writ was brought to reverse a judgment of *Bennington* County Court, rendered *Manchester June* term, 1801. The writ was entered at the *July* adjourned term of this Court the same year; at which term, upon *oyer* of the record craved and read, and diminution alleged, the Court, on motion of the Attorney for the State, issued the following writ of *certiorari* to the Clerk of that Court.

STATE of VERMONT. *Supreme Court of Judicature, Bennington County, Manchester July adjourned term, A. D.* 1801.

To *Nathaniel Brush*, Esquire, Clerk of the County Court, within and for the County of *Bennington*, greeting :

Forasmuch as in the records and process, as also in the judgment of said County Court, at their last term holden at *Manchester*, within and for said County, on the first *Monday* of *June*, A. D. 1801, against *Ezra Brackett*, of said *Manchester*, on a certain information against him the said *Ezra Brackett*, for feloniously taking, stealing, and carrying away from the shop of one *Seth Allen*, in *Dorset*, in said County, three bars of iron, of about one hundred weight, of the value of seven dollars, and of the property of one *John Cook*, of said *Dorset*, against law, and especially one certain statute law of this State, entitled, an act for the punishment of theft, whereof the said *Ezra*

*Brackett* is impeached thereupon by a Jury of the
County, and convicted by judgment of the Court;
wherein it is said manifest error hath intervened to
the grievous damage of the said *Ezra Brackett*, as
by his complaint here in Court we are informed: We,
willing that the said errors, if any there be, should be
duly amended, and full and speedy justice to the said
*Ezra Brackett* be done in the premises, do com-
mand you to send us, distinctly and plainly, under
the seal of said Court, true and attested copies of the
information, record, and judgment thereon, with all
things touching the same, with this writ, and your
return thereon made, so that we may have them at
the next term of our said Court, to be holden at *Ben-
nington*, within and for the County of *Bennington*,
on the third *Tuesday* next following the fourth *Tues-
day* of *January* next ensuing, that by inspecting the
records and process aforesaid, we may cause further
to be done thereupon for amending the said errors,
as of right, and according to the laws of the land,
shall seem to us meet to be done.    Granted and al-
lowed at *Manchester*, in open Court, this 6th day of
*July*, *Anno Domini* one thousand eight hundred and
one.*

Brackett<br>v.<br>The State.

By order of Court,

Attest,

Samuel *Robinson*, 2d Clerk.

---

* As there are no books of entries appropriated peculiarly
to our practice, I have inserted the above writ at large, with
the return, for the benefit of the clerks of the several Courts,
and others who may have occasion to draft it.   It appears to
have been copied *mutatis mutandis* from *Rastal's Entries*, vide
p. 289. under the head of Error.  " *Br. de error sur jug. br.*

Brackett
v.
The State.

STATE of VERMONT. *Bennington County. Clerk's Office.*

(L. S.)

To the Honourable the Justices of the Supreme Court of Judicature, now sitting at *Bennington*, within and for the County of *Bennington*.

In obedience to the within writ, I herewith send up, under my hand and the seal of the County Court of said County, true and attested copies of all the proceedings of said County Court, in the case of the *State of Vermont* against *Ezra Brackett*, with all matters and things touching the information and judgment had and rendered thereon in said County Court.

*Nathaniel Brush*, Clerk.

---

*d'entre."* Perhaps, however, it would have been better to have substituted the more appropriate writ in the same author, p. 290. " *Brief de certiorari sur diminution allege.*" To which excellent compiler, in this infant state of our juridical practice, the gentlemen of the *Vermont* bar are respectfully referred.

Let not the young student be *terrified* by the black letter and frequent abbreviation, or the classical scholar be *disgusted* with the awkward idiom of the *Norman French*, or the bald style of the Monkish Latinity; for they may rest assured, that he who studies *Rastal's Entries* with attention will acquire knowledge profitable for use through his whole professional life. Remember the advice of the immortal *Littleton* to his son, in his third book of tenures, in the chapter of confirmation. " Et saches, mon fits, que un des pluis honorables et laudables et profitables choses in nostre ley, est daver le science de bien pleder en actions realx et personelx, et per ceo jeo toy *counsaile especialment* de metter ton COURAGE et cure de ce apprendre."......*Reporter.*

*Vide Rastal's Preface..*

To *John Shumway*, Esquire, Justice of the Peace within and for the County of *Bennington*, comes *Asa Baldwin* the 2d, one of the Grand Jurors for the town of *Dorset*, and on his oath of office complains and gives said Justice to understand, that *Ezra Brackett*, of *Manchester*, in said County, did, on or about the 20th day of *September*, A. D. 1800, feloniously take, steal, and carry away, from the shop of *Seth Allen*, junior, in *Dorset*, in said County, three bars of iron, of about one hundred pounds weight, the property of *John Cook*, of said *Dorset*, well worth seven dollars; all which taking, stealing, and carrying away is against law, and especially a statute law of this State, entitled, an act for the punishment of theft, and against the peace and dignity of the State of *Vermont*. Your complainant further prays process.

*Dorset, March* 13, A. D. 1801.

*Asa Baldwin*, Grand Juror.

*Bennington County*, ss.

*Dorset, March* 13, A. D. 1801.

Then received the above complaint into my office.

*John Shumway*, Just. Pacis.

To the Sheriff of the County of *Bennington*, his deputy, or either of the constables of *Manchester*, in said County, greeting:

By the authority of the State of *Vermont*.

You are hereby commanded forthwith to apprehend the body of *Ezra Brackett*, of *Manchester* aforesaid, and him have and cause to appear before me or *some other proper authority*, to answer unto the above complaint, and to be further dealt with ac-

cording to law.  Given under my hand at *Dorset*, in the County of *Bennington*, this 13th day of *March*, 1801.

*Manchester, March* 14, A. D. 1801.  Then served the within warrant by apprehending the body of the within named *Ezra Brackett*, and have him here in Court, ready for trial.

*Stephen Martindale*, Constable.

### Mr. Justice Sexton's Record.

The Court opened the 14th day of *March*, A. D. 1801.  The complaint was read, and the prisoner put to plead, who pleaded not guilty, and put himself on a Jury of his country for trial.  A Jury was legally summoned and sworn ; and after hearing the evidence, as well for the State as the prisoner, and what was said against him as well as what was said in his defence, the Jury brought in a verdict that the said *Ezra Brackett* was guilty.  The Court highly approved of the verdict, and thought it was just, and sentenced the prisoner to pay a fine of seven dollars into the town treasury of the town of *Dorset*, and all legal costs of prosecution, and to stand committed until sentence be complied with.  The prisoner in Court moved for an appeal, which is granted him, to the County Court next to be holden in this County in *Manchester*, and entered into a bond of recognisance in the sum of 300 dollars, with sureties to prosecute his appeal to effect, and pay all intervening damages if he failed to make his plea good.

Attest, *George Sexton*, Justice of the Peace.

The bill of costs taxed against the delinquent is ten dollars and nine cents.

Brackett<br>v.<br>The State.

Attest, *George Sexton*, Justice of the Peace.

*Bennington County*, ss, *Manchester, March* the 23d, 1801. The above and within is a true copy of the original complaint and writ, with the proceedings thereon, given from my office, all except the bill of costs.

Attest, *George Sexton*, Justice of the Peace.

*State of Vermont, Bennington*, ss.
County Court, *Manchester June*
Term, A. D. 1801.

*State of Vermont*, Appellee,

v.

*Ezra Brackett*, Appellant.

On complaint of theft, the delinquent being cited to plead to the foregoing complaint, pleaded not guilty, and put himself on the country for trial ; and a Jury, to wit, *Moses Robinson*, &c. good men and true, &c. were impanelled and sworn, who returned a verdict that the said *Ezra Brackett* is guilty.

And now the said *Ezra Brackett*, here in Court, in his own proper person, moves the Court that the verdict of the Jury, in the cause of the State of *Vermont* against him, may be set aside and held for nought, and that no judgment may be rendered against him in said cause. Because he says, that the said *Asa Baldwin* the 2d, Grand Juror as aforesaid, who made out and exhibited the said complaint and information, was not authorized by law to exhibit the same.

Brackett
v.
The State.

Also the crime mentioned in said complaint and information, is therein set forth to be against law, and more especially against a certain law of this State, entitled, an act for the punishment of theft. Also that the said *Ezra Brackett* is not charged to have committed said offence *vi et armis*. Wherefore he prays judgment, &c.

The Court, after hearing, &c. the arguments of the counsel for the culprit on the motion for setting aside the verdict, and arresting the judgment in this cause, do consider, that the matters and things in said motion contained are insufficient in law to set aside the said verdict, and to arrest the judgment thereon to be rendered, and that the culprit take nothing by his said motion. Whereupon it is considered by the Court, that the said *Ezra Brackett*, in consideration of the offence whereof he stands here convicted by verdict of his country, do pay a fine of seven dollars to the treasurer of the town of *Dorset*, with costs of prosecution taxed at thirty-three dollars and twenty-five cents, and stand committed until sentence be complied with.

The foregoing is a true copy from the records and proceedings of the County Court holden at *Manchester*, within and for the County of *Bennington*, on the first *Monday* of *June*, A. D. 1801, in the cause of the *State of Vermont*, appellee, v. *Ezra Brackett*, appellant. In testimony whereof, I, *Nathaniel Brush*, Clerk of said Court, have hereunto set my hand, and affixed the seal of said Court.

*Nathaniel Brush.*

*In nullo est erratum* pleaded and joined.

The errors assigned, with the arguments of counsel, may be collected from the opinion of the Court.

TYLER, Assistant Judge, delivered the opinion of the Court, the Chief Judge being absent, occasioned by sickness.

*Curia.* The errors assigned are,

First. That there is no sufficient information exhibited against the now plaintiff in error, whereon to ground any judgment against him.

Secondly. That the said information or complaint was exhibited by one *Asa Baldwin* the 2d, as Grand Juror of the town of *Dorset*, who was not authorized by law, as town Grand Juror, to exhibit the same.

Thirdly. That the offence charged in the information is not alleged to be done *vi et armis*.

Fourthly. That the offence charged in the information or complaint is laid to be against law, and especially a statute law of this State, entitled, an act for the punishment of theft, there being no such act in force.

Then a general assignment of errors, under which the plaintiff in error sets down the following :

First. That the Justice's record does not set forth in what place the Justice's Court for the trial of the now plaintiff was holden.

Secondly. That *Dorset*, mentioned in the record, is not alleged to be within the Justice's jurisdiction.

Thirdly. The warrant issued by the subscribing authority directs the officer to bring the now plaintiff before him or some other proper authority.

The two first errors particularly assigned, resolve themselves into one question, to wit, whether *Asa*

*Baldwin* the 2d, as a Grand Juror elected by the town of *Dorset*, had a right, in his capacity of town Grand Juror, to file an information under his official oath, for the breach of any law excepting in such cases as are especially provided for by statute, which, by examination of the statute, are found to be two ; the one for the breach of the sabbath act, and the other for the apprehension of the persons and the tools of counterfeiters of coins or bank bills.

This question seems to have arisen from a *casus omissus* in the act regulating town meetings, and the choice and duty of town officers, passed *February* 28, 1797.

A recurrence to former and existing statutes may at the same time show how this happened, and elucidate the principles upon which the opinion of the Court is founded.

*Hough & Spooner's* edit. of the Statutes, p.158. Ib. p. 81, 82. The act for regulating town and other public meetings, and directing the choice of town officers, passed *February* 7th, 1787, provides, that it shall be the duty of the inhabitants, when convened at their annual *March* meeting, to proceed to choose, among other town officers, " *one or more Grand Jurors.*"

On the 27th of *February*, 1787, the General Assembly passed an act " for summoning Juries, and directing Grand Jurors in their duty ;" and by the 7th section enacted, " that all Grand Jurors shall diligently inquire after, and due presentment make of all misdemeanors and breaches of law whereof they have cognisance, whether the same were committed before said Grand Jurors were chosen and sworn to said office, or afterwards, which presentment they shall seasonably make to the Court, or some Justice

of the Peace, that the offenders may be dealt with according to law."

The practice under these acts was for the clerks of the Supreme and County Courts to issue *venires*, summoning these Grand Jurors, thus elected by the towns in the several Counties to appear at Court, where, when impanelled, charged, and sworn, they constituted the Grand Jury attending at such Court as they were summoned, as had been provided in the first section of this act: that when such clerks shall be certified by the State Attorney of the County where such Court is to set, that a Grand Jury will be necessary, they shall also issue their precepts, directed as aforesaid, for summoning *so many of the Grand Jurors elected by the several towns* in such County, as to such clerks shall appear necessary, not exceeding twenty-four, nor less than thirteen, to appear on the first day of the sitting of said Court, *to serve as Grand Jurors at said Court.* It was, however, apprehended, that many of these town elected Grand Jurors, continued long in office by repeated re-election, had become accessible to delinquents. Therefore the General Assembly, on the 27th of *January*, 1791, passed an addition to this act; and by the second section enacted, " that whenever the *Attorney General** shall think it necessary for the Grand

Brackett
v.
The State.

*Haswell's* edit.
State Stat. p.
271, 272.

---

* From the organization of the government to the year 1790, the prosecutions on behalf of the State, both in the Supreme and County Courts, had been managed by State Attorneys, appointed by the respective County Courts in each County. *October* 28, 1790, the General Assembly passed an act, appointing an Attorney General, and regulating his office and duty; whose duty it was to prosecute all matters and causes properly

Jury to attend the Supreme Court, it shall be his duty to notify the same to the Clerk of said Court, a sufficient time before the sitting of the same, who shall issue his *venire*, directed as aforesaid, requiring him to summon as many able freeholders as are mentioned in said *venire*, from the different towns therein mentioned, not exceeding twenty-four, nor less than thirteen, to attend on said Court, on the first day of the sitting of the same, at ten o'clock in the forenoon. *And in order that said Jury shall be impartially summoned*, it shall be the duty of the sheriff or his deputy, who shall receive said *venire*, to repair to the respective clerks of the towns out of which the Jury is directed to be summoned, and the town clerk, with the advice of one or more Justices of the Peace within said County, shall agree upon three times the number of able freeholders in said town, and out

cognisable by the Supreme Court on behalf of the State. *Haswell's* edit. *Vermont* Stat. p. 257. This office continued in existence until *October* 19th, 1795, when the Legislature repealed this act, and so much of the act of *March* 8, 1787, which empowered the County Court to appoint State Attorneys in each County ; and provided, by an act of that date, " that there should be appointed annually by the Legislature, at their *October* session, in the same manner as other County officers are elected, one State Attorney, within and for the several Counties in this State, who shall be duly sworn, &c. whose duty it shall be to prosecute all matters and causes within their respective Counties, which are properly cognisable by the Supreme and several County Courts, on behalf of this State, &c. The substance of which act, on the revision of the statutes in 1797, *Vermont* Stat. was embodied into the act appointing State Attorneys, and vol. 2. p. 53. Clerks of the Supreme Court in the several Counties in this State, and regulating their office and duty, passed *November* 10th, 1797, and now in force.....*Reporter.*

of that number shall draw by lot the number required
for Grand Jurors, who shall be summoned as afore-
said." On the revision of the statutes in 1797, this
act was repealed, and the existing statutes passed.
The 59th section of the present judiciary act enacts,
" that it shall be the duty of the clerk of the Su-
preme Court of Judicature in each County, some
time previous to every stated session of said Court,
to issue a *venire* directed to the sheriff of the County,
or his deputy, and seasonably to deliver or cause the
same to be delivered to such sheriff or deputy, com-
manding him to summon eighteen judicious men,
being freeholders within said County, from the se-
veral towns in said County therein mentioned, to ap-
pear before said Court at ten o'clock, on the first day
of the session of said Court, to serve as Grand Jurors
in said Court; which Jurors shall be drawn in the
same manner, and summoned within the same times,
and a return thereof made in the same manner as is
directed in the preceding section, which, treating of
Petit Jurors, provides, " that such sheriff or his de-
puty shall repair to the town clerk's office in every
such town, and in his presence, or, in case he shall
be absent, in the presence of one or more of the se-
lectmen of such town, *draw out of the box* contain-
ing the names of the persons nominated by the au-
thority of such town to serve as ――― Jurors, the
number his *venire* directs him to summon." The
mode of nominating and electing such persons whose
names shall be put into the Jury-box is provided for
by the 5th section of the act regulating town meet-
ings, and the choice and duty of town officers;
which enacts, " and the selectmen, constable or con-
stables, town clerk, and such magistrates of the town

Brackett
v.
The State.

Vermont Stat.
vol. 1. p. 78, 79.

Ib. p. 409.

who may be present, shall agree upon such number of judicious and discreet freeholders to serve as Grand Jurors and Petit Jurors, as they shall judge will be the proportion of said town to attend the Supreme Court of Judicature and County Courts the year ensuing, which number shall be nominated by said authority, and chosen by the inhabitants present; and it is hereby made the duty of the town clerks to write the names of the persons so chosen on separate pieces of paper, and put them into different boxes, to be kept in his office, provided at the expense of the town for that purpose."

By the 3d section of the same act, it is made the duty of the inhabitants of the several towns to choose " *one or more Grand Jurors*," without expressly declaring them to be merely town officers, or defining their powers. These town officers having been habituated to enter complaints under their official oaths in all cases under the repealed regimen, have, in many instances, continued the practice since the revision of the statutes; and hence arose the mode of bringing the present information or complaint, which is excepted to as erroneous.

The State Attorney does not show any existing statute giving to town Grand Jurors the power to prefer an information or complaint for the crime alleged at the time of the preferring the complaint in question, but relies upon the act passed the last session of the General Assembly, defining the duties of Grand Jurors, who may be appointed agreeably to law in the several towns in this State for preserving and keeping the peace, which in its preamble recites, that " whereas the duties of Grand Jurors appointed by law in the several towns in this State for preserv-

*Vermont* Stat.
vol. 1. p. 424.
passed *Oct.* 27,
1801.

ing and keeping the peace *are not clearly defined or pointed out by law,* which to remedy, it is enacted, &c. that it shall be the duty of the Grand Jurors of the several towns in this State, who are or shall be hereafter appointed and duly qualified to keep the peace agreeably to law, to inquire into and due presentment make to proper authority, of all offences which may come to their knowledge within their respective towns against the laws and peace of this State, which they in their conscience shall think the design of the law and the good of the community require.

It is said that this act is explanatory and declarative; that the Legislature considered that the town Grand Jurors had the power contended for under the former statutes. Conceding this to be the case, the Court are of opinion, that no citizen ought to be prosecuted criminally under existing statutes, which are so obscurely made as that they cannot be readily comprehended; that if the town Grand Juror of *Dorset* had the power contended for, by the pre-existing statutes, which it is manifest he had not, the Legislature, in the preamble to the last recited act, have declared that it was *obscurely given,* " that it was not clearly defined or pointed out by law." In criminal prosecutions, where doubts arise in the construction of statutes, which cannot be solved but by Legislative wisdom and power, such doubts, until they are solved, should always operate in the judicial Courts in favour of innocence.

As the powers of these town Grand Jurors were not, before the passing of the act of *October,* 1801, defined by the pre-existing statutes, and inquiry has been made, whether the Grand Juror's office existed by common law, and what were the powers incident

to it, in recurring to the books, we find their origin of ancient date. They are spoken of as early as the reign of *William* the Conqueror, and perhaps are coeval with the institution of hundreds under the *Saxons;* for every hundred was obliged to send two or more Grand Jurors to the Leet Court. But whilst we can attribute their origin to common law, perhaps almost all their principal powers, at least such as they exercise in modern times, are derived from successive statutes, in which they are incidentally mentioned as common informers. In this government we must look to our statute laws for the power of these town Grand Jurors, they being especially creatures of the statutes; and as the statutes existing before that passed the last session of the General Assembly had not empowered the town Grand Jurors to prefer complaints or informations on their official oaths, therefore the preferring the complaint against the plaintiff in error by *Baldwin*, the town Grand Juror of *Dorset*, must be considered erroneous.

The Court consider there is no error as assigned in the third exception, to wit, that the offence charged in the information is not alleged to have been done *vi et armis.*

At common law these words were considered to be necessary in indictments for offences, which amount to an actual disturbance of the peace. *Bacon's Abridgment*, vol. 3. p. 564.

It is not necessary to insert the words *vi et armis*, where they may be fairly implied from other words in a complaint, information, or indictment.

But this Court have ever adopted the distinction known in the *English* practice, under the statute 37th *Henry* VIII. cap. 8. that it is not necessary to insert these words where they may be fairly implied from other words in the complaint, information or indictment. The words *vi et armis* are implied in an indict-

A.

ment for a riot in the words *riotose ceperunt, frege-* *runt, et prostraverunt. Rex* v. *Wind,* 2 *Stra.* 834. The words *vi et armis* are implied in various expressions and words in this complaint. The word *feloniously* in itself sufficiently implies them.

The fourth error assigned, to wit, that the statute is misrecited, might prevail, if it were not for the preceding expression in the complaint " *against law,*" which must always be considered as against the common law of the land; the setting forth the title of a statute not *in esse* must in this case be considered as mere surplusage: but if the complaint should be considered to be laid *contra formam statuti,* the position cited from *Hawk. P. C.* vol. 2. p. 356. that where a crime is laid *contra formam statuti,* yet if it is a crime at common law the indictment may be maintained, has ever been recognised by this Court.

The first exception under the general assignment of errors, that the Justice does not set forth the place where his Court was holden, would be alone fatal. The magistrate should have shown upon his record the place where he held his Court; for it is essential to his official powers, that it be held within the extent of his commission of the peace.

In a criminal prosecution before a Justice of the Peace, his record must show the place where his Court is holden.

The next assignment of error, that *Dorset* is not set forth to be within the Justice's jurisdiction, cannot prevail, as it is cured by reference to other parts of the record.

Upon the last error assigned, " that the warrant issued by the subscribing authority directs the officer to apprehend and bring the now plaintiff before him *or some other proper authority,*" the Court are not advised. The statute expressly prohibits the

Vermont Stat. vol. 1. p. 178. s. 25.

Justices of the Peace, in civil causes, from issuing any writ returnable before any other magistrate than themselves, whilst the common practice has been for Justices to issue their warrants to apprehend delinquents returnable before themselves or some other proper authority. It has been usual in *England* for warrants to issue in this form. The Court, however, do not recollect any decision as to its correctness. As the practice has so long prevailed, and there is no existing law against it, perhaps it may be considered as bottomed on our common law; for if erroneous in the outset, it is now so generally practised, that *communis error facit jus.*

A question has been made, whether *Brackett*, the plaintiff, has not waived any exceptions to the proceedings before the magistrates, by his appeal to the County Court; and as the declaration in error prays the reversal of the judgment rendered by the County Court only, whether this has not restricted the inspection of this Court to the proceedings of the <span>*Vermont* Stat. vol. 1. p. 171.</span> County Court; and reliance is had upon the 7th section of the act defining the powers of Justices of the Peace within this State, which enacts, " that no judgment, sentence, or decree, had or rendered by any Justice of the Peace within this State, on the merits of any civil cause or action within the jurisdiction of a Justice, shall be removed by a writ of error, *certiorari*, or any other process whatever, or shall be re-examined or reversed by the Supreme Court of Judicature, any law, usage, or custom, to the contrary notwithstanding." The citizen is allowed two trials in prosecutions for lesser crimes by the statute law ; one before a single magistrate, and the other by appeal to the County Court, and both ought to be legal

trials. Besides, the delinquent has been tried before the County Court, upon the same complaint or information, with all its imperfections, upon which he was tried before the single magistrate; and it will be observed, that the statute last cited restricts a writ of error only in civil causes, and a writ of error will lie to this Court upon a Justice's judgment in a criminal prosecution; and it is happy for the citizens of this State, that whilst the Legislature, by this statute, have, with paternal care, checked a spirit of petty litigation in civil matters, they have wisely, in criminal prosecutions, preserved the reputation of their fellow-citizens from being sacrificed by the errors of the more uninformed in the law.

*Brackett*
*v.*
*The State.*

A writ of error will lie upon a Justice's judgment rendered on a criminal prosecution.

Let judgment be entered, that the Court, having inspected the record, do find there is error therein, and that the judgment of the County Court be reversed.

Judgment reversed.

*Serenus Swift* and —— ——, for plaintiff.
*Richard Skinner*, State Attorney, and *David Fay*, for the State.