The People v. Eliza Phillips. ·

## NEW YORK CIRCUIT.

MARCH, 1847.

Before EDMONDS, Circuit Judge.

---

THE PEOPLE v. ELIZA PHILLIPS.

The power of summarily convicting offenders being in derogation of the common law, must be strictly confined to the special statute from which its force is derived.

The restrictions and regulations relative to these convictions established by the higher courts in England before the Revolution, were declaratory of the common law, and are binding in this State, unless they have since been repealed or altered by statute.

A *record* must be made up in every such case as a prerequisite to commitment; and *trespass* will lie against a magistrate who commits without having so done. The reasons of its necessity are:—

    1. For protection of the accused —that he may not again be convicted of the same offense.

    2. For protection of the magistrate — a proper record being conclusive evidence in his favor, in cases within his jurisdiction.

    3. In the absence of an appeal, the only mode by which the accused can obtain a review of the sentence is by habeas corpus or certiorari, founded on the record.

Greater certainty is required in such records than in indictments, because they are taken as true against the accused; and nothing will be presumed in favor of the commitment, but the presumption will be against it.

Although there is no jury trial, the proceedings must be according to the course of the common law in trials by jury.

    There must be first an information or charge, and the defendant must be summoned and have an opportunity to make his defense.

    The evidence in support of the charge must be such as the common law approves, unless specially directed otherwise by statute.

    There must be a conviction, judgment, and execution, all according to the course of the common law.

The *record* is designed to show the regularity of the proceedings, and that the sentence is supported by legal evidence; therefore every thing necessary to support a conviction must appear upon it. It must set forth:—

    1. The particular circumstances constituting the offense, to show that the magistrate has conformed to the law, and has not exceeded his jurisdiction. A mere statement of the offense in the terms of the statute is insufficient.

    2. The plea of the defendant, whether confession or denial.

    3. The names of the witnesses, to show their competency.

4. That the evidence was given in the presence of the accused, that it may appear he had the opportunity of cross-examination.

5. The whole evidence, both for prosecution and defense, so far as applicable to the charge, to show that every material allegation was sustained by proof.

6. An adjudication of the guilt of the accused, which must be exact and precise, judgment for too little being as bad as for too much.

SUMMARY conviction for vagrancy.

On the 31st of August, 1846, Eliza Phillips presented to the circuit judge a petition for a writ of certiorari to certify the cause of her detention in the penitentiary on Blackwell's Island.

On the 3d September, the keeper made a return to the certiorari, that she was detained in his custody by virtue of a commitment by one of the police magistrates in the following words:

CITY AND COUNTY OF NEW YORK, ss:

By —— ——, Esq., one of the special justices for preserving peace in the city of New York:

To the constables and policemen of the said city, and every of them, and to the keeper of the penitentiary of the city of New York.

These are in the name of the people of the State of New York, to command you, the said constables and policemen, to convey to the said penitentiary the body of Eliza Phillips, who stands charged before me of being a vagrant, viz.: an idle person, having no home or means of living, being a common prostitute, having no lawful employment whereby to maintain herself, and whereof, he —— convicted on competent testimony. And you, the said keeper, are hereby commanded to receive into your custody in the said penitentiary, the body of the said Eliza Phillips, and her safely keep for the space of sixty days, or until she shall be thence delivered by due course of law.

Given under my hand and seal, this 4th day of August, in the year of our Lord one thousand eight hundred and forty-six.                    (Signed)     ᴳ          —— ——

*A. Nash*, on behalf of the prisoner, controverted the return and set forth the record of conviction in the following words:

POLICE OFFICE, HALLS OF JUSTICE.

CITY AND COUNTY OF NEW YORK, ss:

Be it remembered, that on the 4th day of August, 1846, Alexander McDougal, of the said city and county, did bring before me, one of the special justices for preserving the peace in the city and county of New York, one Eliza Phillips, and did complain unto me, and give me to be informed, that on this present day, at the said city and county, the said Eliza Phillips was a common prostitute, who had no lawful employment whereby to maintain herself, and was a vagrant within the intent and meaning of the statute, which complaint and information being heard by me at the city and county aforesaid, I, the said justice, on the day and year aforesaid, at the city and county aforesaid, upon the oath of said Alexander McDougal, as well as upon the examination of the said Eliza Phillips, taken before the undersigned, having jurisdiction in the matter, being satisfied that the said charge and accusation were in all respects just and true, and that the said Eliza Phillips was a vagrant within the description of the statute in such case made and provided, did therefore convict the said Eliza Phillips of being such vagrant; and it appearing to me that the said Eliza Phillips ——— improper person to be sent to the almshouse, I, the undersigned, thereupon sentenced her to the penitentiary, for the term of two months.

            (Signed)        ——— ———

*J. D. Phillips*, Assistant District Attorney, demurred, and the prisoner joined in demurrer.

*A. Nash* claimed that the record was void, and therefore the prisoner was entitled to her discharge.

*The Circuit Judge:* I have been so frequently called upon to discharge from the penitentiary, prisoners committed on

The People v. Eliza Phillips.

summary convictions for vagrancy, on the ground of some alleged defect or irregularity in the proceedings of the sitting magistrate, that I have deemed it advisable, on this occasion, to give the subject a full examination, in the hope that the matter, being thoroughly understood, the corrective for the evil may once for all be applied.

Our Revised Statute (vol. i. p. 633), declares that if a magistrate be satisfied, by the confession of the offender, or by competent testimony, that the accused is a vagrant within the description of the statute, he shall make up and sign a record of conviction thereof, which shall be filed in the office of the clerk of the county, and shall by warrant under his hand, commit such vagrant, etc.

Under this law and one subsequently passed (Laws of 1833), somewhat enlarging the description of the offense and varying the punishment, the magistrates mainly proceed in the class of cases now under consideration.

And the mode of proceeding is not by a formal trial by a jury, but is by a summary conviction, which is described to be the examination and punishment of offenses in a summary manner by justices of the peace out of their sessions and without the intervention of a jury or an open trial. (Paley on Convictions, 1.)

The power thus exercised is not in conformity to, but is in derogation of, the common law, is derived solely from the statutes, and all the proceedings under the authority so created must be strictly conformable to the special law, in each instance, from which all their force is derived. (*Cole's case*, Sir W. Jones, 139, 170; 1 Showers, 14.)

The earliest statute upon which a summary conviction is on record, is that of 33 Henry VIII., ch. 6. This was in 1544. From that time to the present, statutes have been enacted, extending the jurisdiction to other cases, and regulating its exercise. So great has been this extension, that in England and Wales, the number of summary convictions in one year (1842) was 71,725.

Immediately after the creation of this new judicatory, its

dangers became manifest. The earliest case reported (43 Eliz.) is that of a sheriff's officer going to execute a writ against a justice of the peace for a debt, and taking with him a hand-gun from the apprehension of a rescue. The justice, instead of obeying the writ, apprehended, convicted, and imprisoned the officer till he paid a fine of £10, under the color of the act of parliament against carrying daggs or short guns.

The necessity of putting under some restraint a power so summary, so arbitrary, so materially affecting personal liberty, and so liable to be perverted to purposes of oppression and wrong, required from the courts great watchfulness and care. Hence, frequent decisions were made by the higher courts in regard to it, and a system of regulations and restrictions grew up and became incorporated into the common law. Those regulations and restrictions were a part of the common law at the adoption of our Constitution, which made the common law the law of our land, and when, by our statutes, we adopted this peculiar mode of trial, we necessarily subjected it to the principles already established in regard to it, and we must, therefore, in examining the question before us, go back to the law as it existed at the adoption of our Constitution, and be governed by the rules then established, unless, in the language of our Constitution, they have since been repealed or altered. And it is the more important that those rules should be well understood and rigidly enforced, because our Constitution, in securing to us the trial by jury, secures it only in those cases in which it had been heretofore used. (Art. 7, § 2.)

The British statutes, alive to the dangers of this extraordinary jurisdiction, have, and principally since our Revolution, given an appeal to the accused, by which he can review the judgment which may deprive him of his property, his liberty, and his character. But our statute provides no such remedy; our Constitution deprives him of the protection of a trial by jury, and he has no other protection left to him against the arbitrary exercise or wanton abuse of this extraordinary power, than what he may find in "such parts of the

The People v. Eliza Phillips.

common law and of the acts of the legislature of the colony of New York, as together did form the law of said colony on the 19th April, 1795." (Const. art. 7 § 13.)

It is by that common law that I shall examine the case now before me; mindful, throughout, that no member of this State can be deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment* of his peers. (Const. art. 7, § 1.) And that no person can be deprived of life, liberty, or property, without due process of law. (Id. § 7.)

Among the rules of the common law, and almost the only one of them that has been incorporated into our statute, was that which required a record to be made of every summary conviction. (12 Dalt. chap. 2, § 4; 1 Salk. 300; 8 Co. 60, 38; *Basten* v. *Carew*, 5 D. & R. 558; 3 B. & C. 649; *R.* v. *Eaton*, 2 T. R. 285; *R.* v. *Back*, 1 Str. 147; 1 Rev. Stat. 633, § 3.)

This is rendered necessary by many considerations.

1. For the protection of the accused, that by having a record, particularly describing the offense, he may be saved from being a second time convicted on the same charge. (Paley on Con. 555; *Rex* v. *Midlam*, 3 Burr. 1721.)

2. For the protection of the magistrate. Where he has jurisdiction, a proper record, though made out by himself, is a conclusive defense in any action brought against him by reason of his action in the premises. (*Nixon* v. *Nanney*, 1 G. & D. 370; 6 Jurist, 389; *Gray* v. *Cookson*, 16 East, 13; 2 Cow. Tr. 651; *Mather* v. *Hood*, 8 Johns. R. 44; *Buquet* v. *Watkins*, 1 Mil. La. Rep. 131; Paley, 332; *Fuller* v. *Fotch*, Holt, 287; *Strickland* v. *Ward*, 7 T. R. 631; *Massey* v. *Johnson*, 12 East, 81.)

---

* This must, of course, mean the *lawful* judgment of his peers. The expression in Magna Charta, from which this is taken, is *per legale judicium pairum suorum vel per legem terræ*, and it is not a little singular that in our own Constitution of 1821, as well as in that of 1846, the phrase is used as quoted in the text; implying, on a strict construction of the language, that a man may be deprived of his rights, etc., by the judgment of his peers, whether lawful or not.

And it has been suggested, in some cases, whether the record is not a protection, even on the question of jurisdiction.

3. In the absence of all provision for an appeal, the record becomes the only means the accused has of reviewing the judgment against him, and of ascertaining whether he has been justly condemned. A certiorari, a remedy still left to him, carries up the record alone; and on habeas corpus he can avail himself only of objections so flagrant as to render the commitment absolutely void, not voidable only. Without a record, therefore, and that of a proper character, the party would be deprived of all means of inquiring whether he had been justly condemned, and be also deprived of an effectual remedy against a wanton excess of jurisdiction. He would, it is true, in the latter case, have his remedy in an action of trespass, but that would not come until he had suffered the wrong, and while his conviction would be exceedingly prompt and summary, his remedy for the wrong done him would be very slow and burdensome.

4. In all cases of special and limited authority, especially where it is penal in its character, and to be exercised in derogation of the common law, great strictness and jealousy ought to be exercised, not only in construing the law, but in canvassing the proceedings. Ld. Ch. J. Holt, in *Rex* v. *Whistler* (Holt, 215), with great propriety remarks: "Every body knows that this, being a penal law, ought by equity and reason to be construed according to the letter, and no further. That it is penal is plain, and what is highly so, the defendant is put to a summary trial, different from Magna Charta, for it is a fundamental privilege to be tried by a jury. Then where a penalty is inflicted, and a different manner of trial from Magna Charta instituted, and the party offending, instead of being tried by his neighbors in a court of justice, shall be convicted by a single justice, in a private chamber, upon the testimony of one witness, I fain would know if, on the consideration of such a law, we ought not to adhere to the letter." Hawkins 2 Pl. C. ch. 25, § 13; Lord Kenyon, in *Rex* v. *Jules* (8 T. R. 544); Lord Mansfield, in *Rex* v. *Little* (1 Burr. 613); Ashhurst, J., in

The People v. Eliza Phillips.

*Rex* v. *Green* (Cald. 391); and Abbott, Ch. J., in *Rex* v. *Pain* (7 D. & R.), all maintain the doctrine that greater certainty is required in convictions than in indictments, because the defendant has no opportunity of pleading to these summary forms, and they must be taken strictly, because they must be taken as true against the defendant.

5. It is a well established rule, that a record is an absolute prerequisite to a commitment, and that without it, not only is the party entitled to his discharge, but the magistrate is liable to him in trespass. In one case, where the magistrate had refused to give a record, the court denounced the whole proceeding as "one of the many cases where poachers are pursued with unintermitting vengeance. Here was not only that, but gross oppression also." (3 Burr. 1722.)

The necessity and object of a record being thus established, it only remains to inquire what that record must contain.

It is a memorial of all the proceedings that have taken place up to, and including, the judgment or sentence. (Paley on Con. 65.)

The best summary of the law on this subject which I have found, among the many authorities which I have examined, is in 1 Ward's Justice, 705, Tit. Conviction, in these words:

The power of a justice of the peace is in restraint of the common law, and in abundance of instances, is a tacit repeal of that famous clause in the great charter, that a man should be tried by his equals, which also was the common law of the land long before the great charter, even for time immemorial, beyond the date of histories and records. Therefore, generally, nothing shall be presumed in favor of the office of a justice of the peace; but the intendment will be against it. Therefore, where a special power is given to a justice of the peace by act of parliament, to convict an offender in a summary manner, without a trial by jury, it must appear that he hath strictly pursued that power; otherwise the common law will break in upon him and level all his proceedings. Therefore, where a trial by jury is dispensed withal, yet he must proceed nevertheless, according to the course of the common

law in trials by juries, and consider himself only as constituted in the place both of judge and jury. Therefore, there must be an information or charge against a person; then he must be summoned or have notice of such charge, and have an opportunity to make his defense; and the evidence against him must be such as the common law approves of, unless the statute specially directeth otherwise; then if the person is found guilty, there must be a conviction, judgment, and execution, all according to the course of the common law, directed and influenced by the special authority given by the statute; and in the conclusion, there must be a *record* of the whole proceedings, wherein the justice must set forth the particular manner and circumstances, so as if he shall be called to account for the same by a superior court, it may appear that he hath conformed to the law, and not exceeded the bounds prescribed to his jurisdiction. (1 Burn, 364.)

A conviction must contain the following particulars:

An information or charge against the defendant; a summons or notice of the information, in order that he may appear and make his defense; his appearance or non-appearance; his confession or defense; the evidence, if he does not confess; and the judgment or adjudication — all these matters must be particularly set out in the conviction. (2 Robinson's Justice, 542; *Brackett* v. *State*, 2 Tyler, 167; *People* v. *Miller*, 14 Johns. R. 371; 4 id. 292.)

The information should state correctly the time when taken, the place, the jurisdiction before which taken, and the charge preferred. (1 Ld. Ray. 509; 2 Bl. Com. 141; *Lacon* v. *Hooper*, 6 T. R. 224.) So that it may appear that it had been given within the time limited by the statute; that the power was exercised at a place commensurate with the jurisdiction, before a magistrate having jurisdiction at that place (2 Salk, 473) — that the offense was directly charged, and not by implication, and contained, in express terms, every ingredient necessary to constitute the crime described by the statute. (*Rex* v. *Bradly*, 10 Mod. 155; *Rex* v. *Trelawney*, 1 T. R. 122; 2 Lord Ray. 791; 2 T. R. 34.)

In describing the offense, a mere compliance with the terms · of the statute will not suffice, for if a magistrate merely states the facts of the offense in the words of the act, when the evidence does not warrant the conclusion, he subjects himself to a criminal information. (*Rex* v. *Thompson*, 2 T. R. 18; *Rex* v. *Pearce*, 9 East, 358;. *Rex* v. *Davis*, 6 T. R. 171; *Ardry* v. *Hoole*, Cowp. 825.)

The particular circumstances which conduce the opinion of the magistrate must be set forth, and not the mere result or conclusion from them. (2 Rob. Jus. 546.)

It must appear that the accused was summoned or appeared before the magistrate. (*Rex* v. *Allason*, 2 Str. 678; *Rex* v. *Venables*, id. 630.) And if he neglects to appear after proof of being duly summoned, the justice may proceed to judgment, but he must state all these facts in their proper order in the conviction. (*Rex* v. *Simpson*, 1 Str. 44; *State* v. *Stokes*, 1 Coxe, 392; *Bigelow* ·v. *Stearns*, 19 J. R. 41; *Son* v. *People*, 12 Wend. 348; *Chare* v. *Hathaway*, 14 Mass. R. 224.)

The plea of the defendant must be set forth, whether of denial or confession. (Paley on Conv. [Deacon's ed.] 139, § 5.)

If he denies the charge, it must be supported by evidence, and the names of the witnesses must be set out, that the court may judge whether they are competent. (*Rex* v. *Tilly*, 1 Str. 16; *Rex* v. *Blaney*, Andr. 240.)

The evidence should be stated to have been given in the presence of the accused, that it may appear he had an opportunity of cross-examination. (*Rex* v. *Vipont*, 2 Burr. 1163; *Rex* v. *Crowther*, 1 T. R. 125; *Rex* v. *Barwell*, 6 id. 75; *Rex* v. *Lovett*, 7 id. 152; *Rex* v. *Swallow*, 8 id. 284; *Rex* v. *Selway*, 2 Chit. 522.)

The whole evidence which applies to the charge must be particularly set out in the conviction, that the court may judge whether sufficient proof appears on the face of it to sustain every material allegation, and to justify the adjudication. (*Rex* v. *Killer*, 4 Burr. R. 2063; *Rex* v. *Vipont*, 2 id. 1165; 2 Rob. Jus. 550, per Lord Mansfield; *Rex* v. *Lloyd*, 2 Str. 999, per Lord Hardwick; *Rex* v. *Theed*, id. 999, per Lord

Raymond; *vide*, also, 2 Doug. 486; *Rex* v. *Smith*, 8 T. R. 588, per Lord Kenyon; *Rex* v. *Warnford*, 5 D. & R. 489; *R.* v. *Dove*, 3 B. & Al. 596; *R.* v. *Taylor*, 2 Chitty R. 578; *Commonwealth* v. *Hardy*, 1 Ashmead R. 411.)

It will not be sufficient to state that "the said offense was duly and fully proved," for that is to state the result of the evidence, and not the evidence itself. (*Rex* v. *Reed*, Doug. 490; *Rex* v. *Lovett*, 7 T. R. 122.)

And the evidence for the defendant, as well as that for the prosecution, must be set out. (2 Rob. Jus. 561; *Rex* v. *Clarke*, 8 T. R. 220.)

The record must contain an adjudication of the magistrate upon the evidence, as to the guilt or innocence of the prisoner. (*Rex* v. *Harris*, 7 T. R. 238; *Mayor* v. *Mason*, 4 Dall. 266.)

And the adjudication on every point to which it refers, must be precise and exact, a judgment for too little being as bad as a judgment for too much. (*Rex* v. *Clarke*, Cowp. 610; *Morgan* v. *Brown*, 6 N. & M. 57; 4 Ad. & E. 515; *R.* v. *Patchett*, 5 East, 339; *R.* v. *Hazell*, 13 id. 139; *Cumming's case*, 3 Greenl. R. 51; *Power* v. *People*, 4 Johns. R. 292.)

That the design of the record of conviction is not merely to record the fact of the judgment, but to show that the proceedings required by justice had been regularly observed, and the sentence legally supported by evidence, is everywhere evinced by the language and sentiments of the ablest judges from the time of Lord HOLT, who himself, on all occasions, regarded the obligation of recording the whole proceedings as a necessary counterpoise against the liability to error or misapplication, to which a private and discretionary tribunal is naturally exposed. (Introduction to Paley on Con. xxxiii.)

Every thing requisite to support a conviction should appear on the conviction itself (6 T. R. 538), and its validity must be determined by what appears on the face of it, not by reference to matters *de hors*. (3 T. R. 338.)

It will have been seen in the course of this examination, that the same principles which pervaded the English courts

before the Revolution, have been regarded in our own courts since that event. And it has frequently occurred to our courts, in view of the manifold dangers arising from the exercise of so summary and arbitrary a jurisdiction, that it was the more necessary for them to assert and maintain the principles on which personal liberty is dependent.

The Supreme Court of Massachusetts, in *Chase* v. *Hathaway*, take occasion to say : It is a fundamental principle of justice essential to every free government, that every citizen shall be maintained in the enjoyment of his liberty and property, unless he has forfeited them by the standing laws of the community, and has had opportunity to answer such charges as, according those 'aws, will justify a forfeiture or suspension of them.

In the *State* v. *Savannah* (Charlt. 235), the courts of Georgia hold this language:

"In this country no person can be injured, in his person or property, without an opportunity of defending himself. He has the right of being confronted with his accusers, and of being apprised of the accusation against him. *Audi alteram partem*, is a maxim of natural justice, dear to the human heart and associated with every principle of our jurisprudence. A conviction, founded upon *ex parte accusation*, is the most terrible species of despotism that the human mind can conceive. It is not only a violation of the most obvious dictates of common law, but it is destitute of every principle by which the social compact is supported."

In the case of *Rex* v. *University of Cambridge*, all the judges agreed that the want of a summons was an incurable error; and, on this point, the expressions of Justice FORTESCUE are so impressive, that I cannot avoid inserting them. The objection, says the judge, for want of notice, can never be got over. The laws of God and man, both, give the party an opportunity of making his defense, if he has any.

In *Geter* v. *Commissioners of Tobacco Inspection* (1 Bay's Rep. 357), the courts of South Carolina say :

" The proceedings must be, as nearly as possible, according

to the course of trials before juries at common law; as these justices or commissioners are, on these occasions, put in the place both of judges and juries. The party accused must be summoned; there must be a specific charge against him; and he must have time and opportunity of being heard in his defense. The witnesses against him must all be on oath, agreeable to the rules of law, and reduced to writing, or at least so much as is necessary to the conviction. And in cases of conviction, there ought to be record of it, under the hands and seals of the justices or commissioners, in which so much of the testimony must be set forth, as will bring the offender under the terms of the law, and evince that they have not exceeded the powers given them by the law. If this is not done in such convictions, the common law will break in upon them, and level all their proceedings."

These principles are deeply imbedded in the system of laws in our State, also, and as thousands of our citizens are yearly subjected to the operation of this summary and dangerous jurisdiction, it is of the highest importance that the rules which have been adopted for the purpose of restraining it, within due bounds, should be strictly and carefully preserved.

Testing the record in this case by these rules, it cannot for a moment be sustained.

The information merely states the offense in the words of the statute; it is not stated whether the accused pleaded to the charge; nor whether she was present when the witness was examined; nor is any part of the evidence set forth, and the record is so drawn up, that while two males and one female are named in it, it is the female who is convicted of being a vagrant, and one of the males — which one does not appear — who is thereupon sentenced to the penitentiary for two months.

The record being void, the prisoner must be discharged.