The point of most importance in this case is, whether in cases of summary proceedings, the supreme court, in reviewing them on certiorari, is confined merely to considerations affecting the jurisdiction and the regularity of the proceedings before the inferior magistrate, or whether it is bound to go farther, and examine upon the merits every decision below upon a question of law.
The tendency of legislation towards summary proceedings *Page 325 
has been so great for some time past, and the number of such cases has so greatly increased within a few years, that the late supreme court deemed it necessary to struggle very earnestly to avoid the review of such cases as far as was practicable. That court therefore, in the latter part of its existence, did lay down the rule, that the review should be confined to matters relating only to jurisdiction and regularity of proceedings. But I believe this ruling never met the approval of the profession or of the court of last resort.
The leading case in the supreme court was Birdsall v.Phillips, (17 Wend. 464.) That was a case under the landlord and tenant act, and the questions presented on the argument were, that to give jurisdiction the conventional relation of landlord and tenant must exist; that if the party ever became tenant at will it was by operation of law; that he was in fact tenant for life under a title paramount; together with several objections to the admissibility of evidence. The court held that the regularity of the proceedings not being questioned, and there being no pretense of want of jurisdiction, all these questions related to the merits and would not be reviewed.
The court found it necessary to repeat this ruling many times, and several of the cases in which they did so were cited on the argument and in the opinion of the supreme court in this case. But the doctrine was questioned by the court of errors, in a measure by the late supreme court, and has been held to be otherwise in the present supreme court.
In the case of Anderson v. Prindle, (23 Wend. 616,) where in the supreme court the doctrine of Birdsall v. Phillips had been reaffirmed, the chancellor, who alone delivered any opinion in the court of errors, said that he did not concur in the opinion that the supreme court had no authority to examine the correctness of the decisions of the judge before whom the summary proceedings were had upon questions of law which arose, and were decided in the course of such proceedings. And he held, on the contrary, that the supreme court had full and competent authority to examine, upon the merits, every decision of the *Page 326 
judge upon a question of law, and to affirm, reverse or quash the proceedings as justice should require; and that as a necessary consequence to this power, the inferior tribunal must return to that court on certiorari such part of the proceedings as are material to the examination of the case on its merits. (See alsoNiblo v. Post's Admrs, 25 Wend. 280.)
The present supreme court, in Buck v. Binninger, (3 Barb.S.C. Rep. 391,) ruled in the same manner.
In the cases of summary convictions the same principle has long been established in the English courts and in our own. (ThePeople v. Phillips, 5 N.Y. Legal Obs. 130; Paley onConvictions, passim.) The supreme court overlooked that when the case of Birdsall v. Phillips was before them, but their attention was called to it in Simpson v. Rhinelander, (20Wend. 103,) and the doctrine was admitted in these words: "It must "appear that the party is legally convicted, therefore the evidence "must be regularly set out at large in order that the "court may judge whether the justice has convicted on proper "evidence." But that court say there is a distinction between such convictions and orders and other adjudications.
I confess I am at a loss to discover what the distinction is, where it begins or ends, or on what principle it is founded.
The reason of the rule applies as well in one case of a summary proceeding as another. It is, that the accused may have the opportunity of reviewing the judgment against him and of ascertaining whether he has been justly condemned; and without some such opportunity infinite injustice and oppression may be perpetrated by proceedings not in conformity to the common law, but in derogation of it.
The difficulty has been increased and the error perpetuated by the frequent repetition of the remark that a certiorari carries up nothing but the record, and by the recollection of a statute long existing among us, expressly requiring, on certiorari to a justice of the peace in a civil suit, the whole evidence to be returned. And it has hence been inferred that the evidence is *Page 327 
never to be returned to a certiorari unless expressly required by statute.
This is a great mistake, for it has been the practice a great many years, in removing summary proceedings by certiorari, to require the evidence to be set out, so far, as, in the language of the court for the correction of errors in Anderson v.Prindle, may be material to the examination of the case on the merits. That can be done only by the magistrate before whom the proceedings are originally had, making up a record containing those facts, so that when the certiorari shall carry up only the record, it shall of course take with it the facts necessary to a determination of the case, upon all the points properly examinable on review.
The question what the record shall contain has frequently been before the courts, and in cases of summary convictions, it is well settled both in England and in this country, that it must be a memorial of all the proceedings that have taken place up to and including the judgment; and must contain an information or charge against the defendant, a summons or notice, in order that he may appear and make his defense, his appearance or non-appearance, his confession or defense, and so much of the evidence as is necessary to sustain the charge or defense. (Paley onConvictions, 65; 1 Ward's Justice, 705; 2 Robinson'sJustice, 542; Brackett v. The State, 2 Tyler, 167;Powers v. The People, 4 John. 292; The People v.Miller, 14 Id 371.)
It will not be sufficient to state that "the offense was duly "and fully proved;" for that is to state the result of the evidence and not the evidence itself. (Rex v. Reed, Doug. 490; Rex v. Lovett, 7 T.R. 122.) And the whole evidence which applies to the charge must be set out that the court may judge whether sufficient proof appears on the face of it, to sustain every material allegation and to justify the adjudication. (Rex v. Killett, 4 Burr. 2063; Rex v.Vipont, 2 Id. 1165; 2 Rob. Jus. 550; R. v. Lloyd, 2Str. 999; R. v. Theed, Id. 919; R. v. Smith, 8 T.R. 588; R. v. Whanford, 5 Id. 489; R. v. *Page 328 Dove, 3 B. Ald. 596; R. v. Taylor, 2 Chit. R. 578;Commonwealth v. Hardy, 1 Ashmead, 411; Mayor v. Mason,
4 Dall. 266; Cumming's case, 3 Greenl. 51.)
That the design of the record is not merely to state the fact of the judgment, but to show that the proceedings required by justice had been regularly observed, and the sentence legally supported by evidence, is every where evinced by the language and sentiments of the ablest judges from the time of Lord Holt, who himself, on all occasions, regarded the obligation of recording the whole proceedings as a necessary counterpoise against the liability to error or misapplication to which a private and discretionary tribunal is naturally exposed. (Intro. to Paley onConv. 33.)
The same principles which pervaded the English courts before the revolution, have been regarded in our own courts since that event. And it has frequently occurred to our courts, in view of the manifold dangers arising from the exercise of a summary and arbitrary jurisdiction, that it was the more necessary for them to assert and maintain the principles on which personal liberty is dependent.
The supreme court of Massachusetts, in Chase v. Hathaway,
(14 Mass. R. 224,) take occasion to say, "It is a fundamental "principle of justice, essential to every free government, that "every citizen shall be maintained in the enjoyment of his liberty "and property, unless he has forfeited them by the standing "laws of the community, and has had opportunity to answer "such charges as according to those laws will justify a forfeiture "or suspension of them."
In the State v. Savannah, (Charlt. 235,) the courts of Georgia hold this language: "In this country no person can be injured, "in his person or property, without an opportunity of defending "himself. He has the right of being confronted with his accusers, "and of being apprised of the accusation against him. "Audi alteram partem, is a maxim of natural justice dear to "the human heart, and associated with every principle of our "jurisprudence. A conviction, founded upon ex parte accusation, *Page 329 
"is the most terrible species of despotism that the human "mind can conceive. It is not only a violation of the most obvious "dictates of common law, but it is destitute of every principle "by which the social compact is supported."
In Geter v. Commissioners of Tobacco Inspection, (1 Bay'sRep. 357,) the courts of South Carolina say: "The proceedings "must be as nearly as possible, according to the course of trials "before juries at common law; as these justices or commissioners "are, on these occasions, put in the place both of judges "and juries. The party accused must be summoned; there "must be a specific charge against him; and he must have time "and opportunity of being heard in his defense. The witnesses "against him must all be on oath, agreeable to the rules of law, "and reduced to writing, or at least so much as is necessary to "the conviction. And in cases of conviction, there ought to be "a record of it, under the hands and seals of the justices or "commissioners, in which so much of the testimony must be set "forth, as will bring the offender under the terms of the law, "and evince that they have not exceeded the powers given "them by the law. If this is not done in such convictions, the "common law will break in upon them, and level all their proceedings."
These rules necessarily give the supreme court the opportunity as well as the power to review the proceedings of the inferior magistrate, not only as to jurisdiction and regularity of proceedings, but as to the legality of the judgment which may be pronounced.
The supreme court were wrong in saying, in 20 Wend. 106, that there is such nicety in drawing up penal convictions under the strictness of the common law, that the legislature have in several cases by express enactment prescribed forms omitting the common law requisites. I am not aware that there is any such law on our statute book. It is true that in England such laws have been passed, but only in cases where an appeal has by statute been given to the accused. Where an appeal has not been given, no general form of a record omitting the common *Page 330 
law requisites, will I apprehend be found, even in England, where summary convictions number by tens of thousands annually.
At all events, there is no such statute in this state, and the rule requiring a record on a summary conviction to be thus full and particular was a part of the common law at the adoption of the constitution, and is controlling with us until the legislature shall change it.
The rule is not confined to summary convictions, where personal liberty is mainly involved, but extends to all cases of summary proceedings involving property or liberty, and the distinction sought to be established by the supreme court in 20 Wend. 103, between summary convictions and other summary proceedings, as it can find no reason to sustain it in the reported case, so it has none in fact and is not well founded.
I must not be understood to say, that all the proceedings and evidence before the magistrate must be put into the record, as if the adjudication were to be reviewed on a case made on a motion for a new trial, but only so much as will enable the supreme court to exercise its legitimate authority to examine upon the merits, every decision of the magistrate upon a question of law.
Being then authorized in this case to look into the proceedings before the judge who granted the discharge, we find a difficulty in the outset.
G.W. Stanton Son were petitioning creditors for the sum of $242,821,16. That sum consisted of $198,068,88, of general indebtedness, $10,480,56 and $10,471,72 for deficiency on two chancery foreclosures of mortgages, c. and $20,000 balance due on two judgments, c. They did not add to their signature to the petition a declaration, pursuant to the statute, that they relinquished to the assignees to be appointed, such mortgages or judgments for the benefit of all the creditors, and therefore they were not petitioners in respect to the debts so secured. (2R.S. 36, § 11.)
All then that they actually signed off was $201,868,88, which *Page 331 
was less then two thirds of all the debts. And the judge consequently had no authority to grant a discharge.
The judgment of the supreme court must therefore be reversed and the discharge declared to be void.
GRIDLEY, J. dissented.
Judgment of supreme court reversed, and proceedings before county judge annulled.