THE PEOPLE OF THE STATE OF NEW YORK ex rel. SAMUEL STOLOFSKY, Respondent, *v.* SUPERINTENDENT OF STATE INSTITUTION FOR MALE DEFECTIVE DELINQUENTS AT NAPANOCH, Appellant.

(Argued March 28, 1932; decided April 26, 1932.)

*John J. Bennett, Jr.,* Attorney-General (*Henry Epstein* and *Leon M. Layden* of counsel), for appellant. A male defective delinquent over sixteen years of age may properly be committed to Napanoch when charged with or convicted of vagrancy. (Correction Law, § 438; Code Cr. Pro. § 887.)

*Charles F. Cummings* for respondent. The court had jurisdiction to discharge the relator from Napanoch upon a charge of vagrancy. (*People ex rel. Allan* v. *Hagen,* 170 N. Y. 52; *People* v. *Harding,* 115 Misc. Rep. 298; *People* v. *Putnam,* 3 Park. Cr. Rep. 386; *People* v. *O' Neill,* 117 App. Div. 826; *People ex rel. Frank* v. *Keeper,* 38 Misc. Rep. 240.)

CROUCH, J. The return to the writ of habeas corpus herein pleads a commitment by the county judge of Onondaga county as authority for the detention of the relator. The commitment, dated November 15, 1925, shows that the relator, " arraigned, indicted for or con-

victed of the crime of Vagrancy," was twenty-five years
of age and had been certified as a mentally defective
person by two duly qualified examiners of mental defect.
The certificate states that the relator had been arrested
and convicted three times for annoying little girls; that
he was, among other things, easily angered, excitable,
impulsive, depressed, seclusive, secretive, a liar, sexually
promiscuous, manually dextrous, of a mental age of
eight or nine years, and, in the opinion of the examiners,
liable to injure others.

At the date of the commitment the reformatory at
Napanoch had been converted, pursuant to the provisions
of section 22-b of the Mental Deficiency Law (Cons. Laws,
ch. 71, amd. by Laws of 1921, ch. 483; now Correction Law
[Cons. Laws, ch. 43, §§ 430, 438]), into a State institution
" for the care, training and treatment of mental defectives
over sixteen years of age charged with, arraigned for or
convicted of criminal offenses." Section 24-b of that
law provided that " a male mental defective over sixteen
years of age charged with, arraigned for or convicted of
a criminal offense may be committed to the state institu-
tion at Napanoch established pursuant to section twenty-
two-b."

The writ herein was sought, granted and has been
sustained upon the ground that the commitment was
void for want of jurisdiction, in that being a vagrant is
not a crime and hence not a criminal offense, as that
term was used in the Mental Deficiency Law.

The Penal Law contains no provisions relating to
vagrants as such. It may be conceded at once that the
course of conduct, mode of life and specific acts or omis-
sions which under section 887 of the Code of Criminal
Procedure constitute a public offense and fix the actor's
status as a vagrant do not constitute a crime within the
definition of section 2 of the Penal Law. That they do
not constitute a criminal offense within the meaning of
the former Mental Deficiency Law or of the present

Correction Law does not follow. The background of all vagrancy statutes has been unemployment and pauperism with their incidental evils. The problem involved, simple at first, became more difficult with the increasing complexity of social organization. In addition to the impotent poor who were unable to support themselves, there came to be a class of able-bodied vagrants who supported themselves by preying on society and thus threatened the public peace and security. The former were dealt with by charity; the latter had to be and were dealt with by the criminal law. (Cf. 4 Holdsworth's History of English Law, 388, 389.) The statutory history of the subject in this State discloses the same problem and the same method of dealing with it. The act of February 9, 1788 (1 R. L. 114, Van Ness & Woodworth, 1813 ed.), differs but little in substance from the present statute and was essentially criminal in character. In the Revised Statutes the subject (See 1 R. S. p. 632, title II, § 1) was included in chapter XX, which related to the internal police of this State and embraced as well poor support, care of lunatics, habitual drunkards, disorderly persons, immorality and disorderly practices, gambling and profane swearing. Again there was the contrast and the clear distinction between the unfortunate and the criminal poor. The present vagrant statute is included in part VI of the Code of Criminal Procedure, which relates to " Special Proceedings of a Criminal Nature." A proceeding thereunder is one of those referred to in section 962 of that Code as " proceedings in criminal cases." Under all these statutes the procedure, though summary, has all the characteristics of criminal procedure and a conviction eventuates in a penal judgment and execution. ( *People* v. *Phillips*, 1 Park. Cr. Rep. 95.) " Proceedings against vagrants * * * are as essentially punitive as any sentence imposed for crime." (CULLEN, J., in *Steinert* v. *Sobey*, 14 App. Div. 505, 508.)

We said in *People ex rel. Burke* v. *Fox* (205 N. Y. 490,

494) that vagrancy was not a crime but one of those minor offenses which are merely violations of police regulations. Elsewhere the offense has been described as petty, quasi-criminal, or a lesser offense not amounting to a misdemeanor. In all those cases the distinction made was between the particular offense and crime in the strict sense as defined in the Penal Law. In none of them is there anything to indicate that the offense was not of a criminal nature, and hence a criminal offense, as that term was used in section 24-b of the Mental Deficiency Law. The broad purpose of that law was to segregate the mentally deficient criminal offender and to subject him to treatment and instruction, as well for the protection of society as for his own sake. Had the Legislature intended the law to operate only upon those charged or convicted of strict crime, it is fair to suppose it would have said so. In section 24-b, where the technical terms " misdemeanor " and " felony " are aptly used, there again occurs the phrase " criminal offense," instead of the technical word " crime." To us it seems unreasonable to narrow by interpretation the wider term which was used and was demanded by the purpose of the law.

The order of the Appellate Division and that of the Special Term sustaining the writ should be reversed and the relator remanded to the custody of the superintendent of the State Institution at Napanoch.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur; KELLOGG, J., not sitting.

Orders reversed, etc.