THE STATE OF IOWA, Appellee, v. FRED CLIFFORD, Appellant.

1. **Admissions:** TESTIMONY OF PERSON UNDER ARREST BEFORE GRAND- JURY. The involuntary admissions of one made under oath before a grand jury, in respect to an offense for which he is then under arrest, and without being informed of his rights in the premises, or of the effect of his testimony, are not competent evidence against him upon a subsequent trial under indictment for such offense.

2. **Larceny:** CIRCUMSTANTIAL EVIDENCE: VERDICT. Evidence that one rode to town with a codefendant with a load of clover seed that had been stolen, saw his codefendant hide the sacks that had contained the seed under a culvert in the road, and returned with him from town, is not sufficient to support a verdict of simple larceny, in the absence of any direct evidence connecting the accused with the offense charged, or of any showing that he exercised any control over the seed, or the team and wagon by which it was conveyed.

3. **Practice:** SETTING ASIDE VERDICT: INSUFFICIENCY OF EVIDENCE. Where the evidence in support of a verdict for larceny was so slight that the district judge in passing sentence upon the defendant stated to him, that he had "been found guilty of the crime of larceny upon very slight evidence," and that he believed if the accused "had conducted himself upon the witness stand as he should have done, no jury would have been found that would have returned a verdict of guilty upon such slight and trivial evidence," *held,* that the district court should have set the verdict aside.

*Appeal from Shelby District Court.*—HON. WALTER I. SMITH, Judge.

SATURDAY, OCTOBER 22, 1892.

THE defendant was indicted for the crime of larceny from a building in the nighttime, and was convicted of simple larceny. He appeals.—*Reversed.*

*Byers & Lockwood,* for appellant.

*John Y. Stone,* Attorney General, and *Thos. A. Cheshire,* for the State.

KINNE, J.—I. The defendant and one Fillmore were indicted for stealing from the barn of Axline & Smith, in the nighttime, twenty-six bushels of clover seed, of the value of one hundred and twenty-five dollars. The court permitted a witness named Cuppy to testify in rebuttal on part of the state as to statements made by the defendant in his examination before the grand jury. It appears that while the defendant was under arrest and in the county jail, charged with the commission of the very crime for which he was afterwards indicted and tried, the foreman of the grand jury, then in session, had the sheriff of the county bring the defendant before said body, where he was examined under oath as to his supposed connection with the alleged larceny. It does not appear that the defendant was informed as to his rights, or of the effect of the answers he might give, or as to the fact as to whether or not such answers could afterwards be used against him. No minutes of his testimony were taken by the grand jury. We may properly assume that he testified under oath, without being informed as to his rights, or the effect of his testimony, or the possibility of its use against him thereafter. It is contended that his statements so made before the grand jury were not voluntary, and hence inadmissible against him upon the trial. The course of procedure pursued by the grand jury with reference to the examination of this witness was unprecedented, and, to our minds, wholly unjustifiable from any point of view. They had no right to compel the defendant, then in custody, and charged with the commission of the crime inquired about, to give testimony before them. To put him under oath, under such circumstances, without advising him of his rights, was attempting to take an unfair advantage of his situation, to his prejudice. A statement so procured could

*1. ADMISSIONS: testimony of person under arrest before grand jury.*

in no proper sense be said to be voluntarily made. A confession or statement, to have been voluntarily made, must proceed "from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous disturbing cause." "If made under oath by the party charged, upon a judicial inquiry as to the crime, it [the confession] is rejected, as not being voluntary." *People v. McMahon*, 15 N. Y. 395. The law is well settled that when a person is compelled to answer questions under oath, put to him by a committing magistrate, touching his supposed connection with the crime then being investigated, and of which he stands accused, his statements are not admissible against him. 3 Amer. & Eng. Encyclopædia of Law, p. 488; Wharton's Criminal Evidence, secs. 668, 669; *State v. Mathews*, 66 N. C. 106; *People v. McMahon*, 15 N. Y. 384; *People v. Mondon*, 103 N. Y. 211; 8 N. E. Rep. 496. And it is said that, unless the defendant comprehended his rights fully, and is informed by the court or examining body that his refusal to answer the questions propounded to him could not prejudice his case, or be construed as an evidence of his guilt, any responsive confessions implicating him in the crime charged must be regarded as involuntary, and hence inadmissible. Wharton's Criminal Evidence, secs. 668, 669; *State v. Rorie*, 74 N. C. 148; 1 Greenleaf on Evidence, secs. 225, 226, and notes. The same rule would apply as to examinations had, as in this case, before a grand jury. Some of the states, by statute, require magistrates conducting such examinations to admonish the prisoner as to the effect of his answer and his right to refuse to answer, but it is believed that the general rule of law is as above stated, even in the absence of such a statute.

Counsel for the state contend that the evidence was admissible, and cite Code, section 4285; *State v. Hayden*, 45 Iowa, 11; *State v. Row*, 81 Iowa, 138, and some

Indiana cases.   The statute referred to provides that
a member of the grand jury may be compelled to dis-
close the testimony of a witness examined before such
jury, to ascertain if it be consistent with that given by
him before the court.   It cannot be said that this stat-
ute had the effect of making the testimony given before
the grand jury, under oath and involuntarily, by one
at the time charged with the very crime then being
inquired about, and who, when so examined, was under
arrest therefor, competent on a trial of the party under
indictment for such crime.   Counsel have cited no case
so holding, and we find none.   We see no reason for
holding that the legislature, in enacting the statute
referred to, intended to abrogate the universal rule of
law that involuntary admissions in confession of a
defendant charged with a crime are inadmissible against
him on a trial for such crime.   The statute was, we
think, not intended to cover such a case, and thereby
permit a grand juror to give evidence of such involun-
tary confession, which no other person is permitted to
testify to.   If the defendant, when examined before
the grand jury, had been advised as to his rights, and
then given evidence, the rule might be different.   In
*State v. Briggs* (68 Iowa, 424), it was held that a plea of
guilty, entered by a defendant to a preliminary infor-
mation, he not being informed as to his legal rights,
was a voluntary admission of his guilt, and admissible
against him.   No authorities are cited in support of
this holding.   In the case at bar the defendant was
put under oath.   He was taken before the grand jury,
not of his own volition, but by the direction of the
examining body, for the purpose of being interrogated
as to his supposed connection with the crime with
which he was accused.   In the *Briggs' case* the magis-
trate afforded him an opportunity to plead guilty or
not guilty.   In the case at bar, the proceedings as to
the defendant's being sworn and examined were of a

compulsory character, no election being afforded him. For these and other reasons the holding in *State v. Briggs* does not apply. See, also, *State v. Carroll*, 85 Iowa, 1.

II. It is claimed that the evidence does not warrant a verdict of guilty. In substance, the evidence shows

2. LARCENY: circumstantial evidence: verdict.

that Axline & Smith, in January, 1892, had thirteen sacks of clover seed stored in their barn; that about January 20, 1892, said seed was stolen by some one; that it was of the value of $125; that one Clouser had worked for Axline & Smith, and, among others, knew where the seed was stored; that he visited Fillmore, who was jointly indicted with the defendant, before the seed was taken; that the sacks which had contained the seed were found, after it had been stolen, at Hancock, Iowa; that about the time the seed was taken Fillmore hauled to Council Bluffs, and sold there, about twenty-six bushels of clover seed; that Clifford went with him to Council Bluffs, and on the way he ascertained from Fillmore that he had clover seed in the sacks in the wagon and saw him hide the sacks under a culvert in the wagon road, where they were afterwards found. It appears also that the defendant accompanied Fillmore back from Council Bluffs to Avoca. The reasons the defendant gave for going to Council Bluffs with Fillmore were, in part at least, unsatisfactory. But there was no direct evidence in any way connecting the defendant with the crime charged. So far as appears, he received no part of the money paid Fillmore for the seed. It does not appear that he was seen at or near the barn where the seed was stored. There is no showing that he in any manner exercised any control over the seed or the team and wagon by means of which it was conveyed to Council Bluffs. The defendant seems to have been a passenger with Fillmore to Council Bluffs under suspicious circumstances, which, however,

are explainable and consistent with his innocence of the crime charged. The testimony does not point with reasonable certainty, even, to the defendant's guilt. Stated most strongly against the defendant, it is a case of suspicion, not of guilt established. We are at a loss to understand on what the jury based a verdict of guilty, unless it was that the defendant, in a few of his answers, evinced a disposition to be what is usually called a "smart" witness. The verdict is without foundation to support it, and cannot stand.

III. It clearly appears from this record, that the trial court had grave doubts as to the defendant's guilt. When the court came to impose sentence on the defendant he said to him: "Mr. Clifford, it is contrary to my usual practice to make any comments when passing judgment in cases of this kind, but in this case I am constrained to say to you that you have been found guilty of the crime of larceny upon very slight evidence. I firmly believe that, if you had conducted yourself upon the witness stand as you should have done, no jury could have been found that would have returned a verdict of guilty upon such slight and trivial evidence." The conduct which the court speaks of was the manner of the defendant on the stand, especially in his answers to certain questions relating to his reasons for going to Council Bluffs. These answers, which we need not set out here, indicated a want of moral character and rectitude in other directions. We think this was clearly a case where the trial court should have exercised its right to set aside the verdict. If a man is to be committed to the penitentiary for a crime, his guilt of which is established, if at all, by circumstantial evidence, such evidence should not only point him out as guilty, but be inconsistent with any reasonable theory as to his innocence. This the testimony in this case fell far short of doing. It

3. PRACTICE: setting aside verdict: insufficiency of evidence.

will not do to let a verdict stand which deprives a man of his liberty, when it is based upon mere suspicion. The judgment of the district court is REVERSED.