THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK CHLEBOWY, Appellant.

Supreme Court, Special Term, Erie County, April 7, 1948.

*Crucian S. Messina* for appellant.

*Gordon Steele, District Attorney* (*Robert Burrell* of counsel), for respondent.

*Samuel Fleischman* for Regina Chlebowy, complainant.

HALPERN, J. This is an appeal from a judgment of the City Court of Buffalo convicting the defendant-appellant of being a disorderly person, as defined in section 899 of the Code of Criminal Procedure, in that he had failed adequately to support his wife, the complainant, and their child.

The first point raised by the appellant is that there was no proof in the court below that the complainant was likely to become a public charge, it being the appellant's contention that such proof was essential in order to sustain a conviction under the statute.

Section 899 reads in part as follows:

" *Who are disorderly persons.* The following are disorderly persons:

" 1. Persons who actually abandon their wives and children, without adequate support, or leave them in danger of becoming a burden upon the public, or who neglect to provide for them according to their means * * *."

It will be noted that the various forms of the offense are stated in subdivision 1 in the disjunctive but, notwithstanding this fact, it was held in a line of cases, of which *People* v. *McAdam* (164 Misc. 800) was typical, that the statute required proof not only that the accused had neglected to provide for his family according to his means, but also that his failure to do so created an immediate danger of their becoming a burden upon the public. On the other hand, it was held in another line of cases, of which *People* v. *Hosier* (188 Misc. 474) was typical, that proof of the likelihood of the family's becoming a public charge was not essential. The *Hosier* case (*supra*) was affirmed without opinion by the Court of Appeals on February 27, 1947 (296 N. Y. 868). This settles the law in accordance with the literal construction of the statute. It is now authoritatively settled that the danger of becoming a public charge is not an essential element of the offense under section 899 and that a conviction may be sustained upon proof that the accused had failed to provide for his family in accordance with his means.

The question next to be considered is whether the evidence in this case sustained the finding that the defendant had failed to support his wife and child in accordance with his means. The record is somewhat confused, partly because of the fact that the defendant appeared without counsel and conducted the cross-examination of the complainant himself. It appears that for some months prior to May, 1947, the defendant had turned over to the complainant all of his pay running from $80 to $100 per week. The parties separated in May, 1947, the complainant remaining in the family home, which was owned by the parties. After the separation, the defendant paid the complainant $30 per week, which was subsequently reduced to $25 per week, pursuant to informal agreement. For reasons not disclosed in the record, for a period of four weeks beginning September 5th, the defendant failed to pay the complainant the full amount agreed upon, paying only $10 the first week, $10 the second week, $15 the third week, and $20 the fourth week. The $20 payment was made on September 26, 1947, which is the very date specified in the information as the date upon which the defendant committed the offense of nonsupport. Thereafter, the defendant paid the complainant $25 per week down to the time of the trial. The court below found the defendant guilty and placed him upon probation for a period of one year to pay $30 per week for the support of his wife and child. Under the circumstances, in view of the unsatisfactory state of the record and the need for further inquiry into the facts, I have concluded

that the judgment should be reversed on the facts and a new trial should be ordered.

An additional argument is made by the appellant, which raises a general question as to the proper practice to be followed by the court upon the trial of a criminal case where the defendant is not represented by counsel. As has been mentioned above, the defendant appeared without counsel, although the complainant was represented by counsel. At the conclusion of the People's case, the trial court said to the defendant, " Do you want to take the stand, now? " The defendant responded that he did and thereupon he was sworn and examined by the court. Although the defendant did not have the advice of counsel, the court did not caution the defendant that he need not take the stand, that no inference could be drawn against him from his failure to do so and that any testimony that he might give could be used against him.

Under the circumstances, this was not proper practice. Although the court's statement to the defendant was put in the form of a question rather than a direction, it had the effect of virtually calling the defendant to the stand, without advising him that he had the right to refuse. The defendant was before the court under the compulsion of an arrest on a criminal charge. The defendant may well have believed that it was his duty to testify in response to the court's suggestion or, at least, that if he failed to do so, the court would draw an adverse inference from such failure. The defendant not being represented by counsel, the court should have advised the defendant of his privilege under the Constitution and of the corollary principle that the failure of the defendant to take the stand would give rise to no presumption against him (N. Y. Const. art. I, § 6 Code Crim. Pro., §§ 10, 393).

Section 196 of the Code of Criminal Procedure provides that at the conclusion of the People's case upon a preliminary examination by a magistrate upon a charge of an indictable crime, the magistrate must inform the defendant that it is his right to make a statement, that he is at liberty to refrain from making it and that his refusal cannot be used against him on the trial. While this section is in terms applicable only to a preliminary examination as distinguished from a trial upon the merits of an offense triable by the court, the principle of the section is one of general application and is not confined to the precise situation therein described. It has been applied by the courts whenever fair warning was essential in order to protect the defendant's rights under the Constitution (see *People*

v. *Mondon,* 103 N. Y. 211; *People* v. *Ferola,* 215 N. Y. 285). The privilege against self incrimination cannot be made truly effective unless a defendant who is not represented by counsel is advised by the court of the existence of the privilege whenever such advice appears to be necessary.

When a defendant goes to trial upon a charge of a criminal nature without the benefit of counsel, it is the duty of the court to be alert to protect the defendant's rights. Good practice requires that any suggestion by the court that the defendant take the stand be coupled with advice as to his privilege against self incrimination. The defendant may not be called to the stand in a criminal case unless he waives his privilege. He cannot be charged with a waiver of the privilege unless it appears that he was aware of its existence and its surrounding safeguards and voluntarily and intelligently elected to refrain from asserting it.

In the recent case of *People* v. *Morrett* (272 App. Div. 96) the Appellate Division of the First Department reversed a conviction by a magistrate under circumstances similar to those presented in this case. Morett and Holm were charged with the misdemeanor of book-making in violation of 986 of the Penal Law. At the close of the People's case against Morett, the court said to him: " Now you can take the stand." At the close of the People's case against Holm, the court said to that defendant: "All right; take the stand! "

The Appellate Division said (p. 98): "As neither defendant was represented by counsel, it was wholly improper, without advising each defendant that he could stand mute, to invite one and direct the other to take the stand."

In *People* v. *Schindler* (124 Misc. 73) the Appellate Part of the Court of Special Sessions reversed a conviction by a city magistrate on a charge of disorderly conduct, partly upon the ground that the defendants, not represented by counsel, had been examined by the District Attorney without any warning by the magistrate as to their rights. The court said (p. 75): "A defendant in any case may testify as a witness in his own behalf but his neglect or refusal to testify does not create any presumption against him (Code Crim. Proc. § 393) and, under the circumstances, the interests of justice would have suggested the propriety of a formal warning by the magistrate at the close of the People's case in accordance with the spirit of the provisions of the Criminal Code just cited * * *, advising these appellants before their examination by the district attorney."

In an analogous situation, the Court of Appeals has held that where a prospective defendant was called at a coroner's inquest and was examined without the advice of counsel and without being advised of his privilege against self incrimination, his testimony could not be used against him when he was subsequently tried upon a charge of homicide (*People* v. *Mondon,* 103 N. Y. 211, *supra*; *People* v. *Ferola,* 215 N. Y. 285, *supra*). See also the dictum in *People* v. *Lewis* (260 N. Y. 171, 174) to the effect that a criminal trial would be defective if a defendant not represented by counsel were examined without being warned of his privilege against self incrimination.

An analogy may also be found in the cases holding that an indictment found by a grand jury should be dismissed, where it appeared that the prospective defendant had been called before the grand jury and had been examined without being advised of his privilege against self incrimination. It has been repeatedly held that, even though no immunity statute applied to the case and therefore the defendant did not acquire general immunity, the illegally elicited testimony of the defendant could not be used against him and an indictment could not properly be based thereon. (*People* v. *Haines,* 6 N. Y. Crim. Rep. 100; *People* v. *Baumer,* 136 Misc. 17; cf. *People* v. *Stein,* 221 App. Div. 500, appeal dismissed 249 N. Y. 551; *United States* v. *De Lorenzo,* 151 F. 2d 122; see, also, remarks of Charles H. Tuttle, Proceedings of the Governor's Conference on Crime, The Criminal and Society, 1935, p. 74; *People ex rel. Coyle* v. *Truesdell,* 259 App. Div. 282.)

I have not overlooked the fact that the prosecution in this case was for an offense of a criminal nature rather than for a felony or misdemeanor as defined in section 2 of the Penal Law. The prosecution under section 899 is defined by the Code of Criminal Procedure as a special proceeding of a criminal nature (Code Crim. Pro., § 2) and has been referred to by the courts as a prosecution for a criminal offense or a quasi crime (*People ex rel. Stolofsky* v. *Superintendent of Napanoch,* 259 N. Y. 115). However, as the Court of Appeals said in the case cited at page 118: " Under all these statutes the procedure, though summary, has all the characteristics of criminal procedure and a conviction eventuates in a penal judgment and execution."

The privilege against self incrimination clearly applies to such a proceeding and the conduct of the trial, with respect to that privilege, should be precisely the same as that upon a charge of a misdemeanor. It is therefore concluded that it was improper for the court to examine the defendant in this case without

appropriate warning with respect to the privilege against self incrimination.

The remaining question is whether the error was prejudicial. While a large part of the defendant's testimony was exculpatory, it was brought out upon the examination of the defendant by the court that he had been previously convicted upon a charge of assaulting his wife. This evidence, improperly elicited, was plainly prejudicial.

For the reasons herein given, the judgment of conviction should be reversed and a new trial ordered.