[Civ. No. 22439. Second Dist., Div. Two. Aug. 7, 1957.]

CHARLES KILLPATRICK, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

[Civ. No. 22440. Second Dist., Div. Two. Aug. 7, 1957.]

HUMBERTO SAAVEDRA, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

[Civ. No. 22441. Second Dist., Div. Two. Aug. 7, 1957.]

RALPH J. DAVIS, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

David C. Marcus and Caryl Warner for Petitioners.

William E. Lamoreaux, Assistant County Counsel, for Respondents.

FOX, Acting P. J.—The petitions for certiorari in these cases grow out of contempt proceedings in the domestic relations department of the trial court where, in each proceeding, petitioner was adjudged in contempt of court and sentenced to jail for his asserted wilful failure to comply with a prior order of the court for the support of his former wife and children. None of the petitioners had counsel. In each case the prosecutor* called the petitioner as a witness and both he and the judge proceeded to interrogate him. It appears that the trial court did not advise the petitioners of their constitutional rights and in particular that they had a constitutional right not to testify. It is apparent petitioners were unfamiliar with their legal rights and court procedure. It was necessary for one of them to testify through an interpreter.

The decisive question is: Did the failure of the trial court to inform petitioners that they need not testify amount to a violation of their constitutional rights?

In *Ex parte Gould,* 99 Cal. 360 [33 P. 1112, 37 Am.St. Rep. 57, 21 L.R.A. 751], the court stated the pertinent principles here applicable: "Article I, section 13 of the constitution of this state, declares that: 'No person shall be compelled, in any criminal case, to be a witness against himself.' Section 1323 of the Penal Code provides that 'a defendant in a criminal action or proceeding cannot be compelled to be a witness against himself.'

"Contempt of court is a public offense, and by section 166 of the Penal Code is expressly declared to constitute a misdemeanor . . . It is none the less a criminal offense that the statute authorizes it to be punished by indictment, or information, as well as by the summary proceedings provided in sections 1209-1222 of the Code of Civil Procedure. By these provisions, the procedure for the investigation of the

---

*These cases were prosecuted by the district attorney under the Uniform Reciprocal Enforcement of Support Act. (Code Civ. Proc., § 1650.)

charge is analogous to the criminal procedure, and the judgment against the person guilty of the offense is visited with fine, or imprisonment or both—the essential elements of a judgment for a criminal offense. 'Contempt of court is a specific criminal offense. It is punished sometimes by indictment and sometimes in a summary proceeding, as it was in this case. In either mode of trial, the adjudication against an offender is a conviction, and the commitment in consequence is execution.' [Citation.] 'Although the alleged misconduct of the defendants occurred in the progress of a civil action, the proceeding to punish them for such misconduct is no part of the process in the civil action, but is in the nature of a criminal prosecution. Its purpose is not to indemnify the plaintiff for any damages he may have sustained by reason of such misconduct, but to vindicate the dignity and authority of the court. It is a special proceeding, criminal in character, in which the state is the real plaintiff or prosecutor.' [Citation.] In *Ex parte Hollis*, 59 Cal. 408, it was said: 'To adjudge a party guilty of contempt of court for which he is fined and imprisoned, is to adjudge him guilty of a specific criminal offense. The imposition of the fine is a judgment in a criminal case.' '' (Pp. 361-362.) (To the same effect see *Hotaling* v. *Superior Court*, 191 Cal. 501, 504 [217 P. 73, 29 A.L.R. 127]; *In re Ferguson*, 123 Cal.App.2d 799, 801 [268 P.2d 71]; *Brophy* v. *Industrial Acc. Com.*, 46 Cal.App. 2d 278, 283 [115 P.2d 835].)

It is fundamental that requiring a defendant in a criminal case to testify violates his constitutional privilege against self-incrimination. It is likewise a violation of this privilege to compel a defendant to testify in a contempt proceeding. (*Ex parte Gould, supra*; *In re Ferguson, supra*; *Brophy* v. *Industrial Acc. Com., supra*.)

The privilege cannot be made truly effective unless the defendant in a criminal case who is not represented by counsel is advised by the court of the existence of the privilege whenever such advice appears to be necessary. (*People* v. *Chlebowy*, 191 Misc. 768, 772 [78 N.Y.S.2d 596, 600]; *People* v. *Morett*, 272 App. Div. 96 [69 N.Y.S.2d 540, 541].) In the Chlebowy case the court (191 Misc. at 772) stated: ''When a defendant goes to trial upon a charge of a criminal nature without the benefit of counsel, it is the duty of the court to be alert to protect the defendant's rights. Good practice requires that any suggestion by the court that the defendant take the stand be coupled with advice as to his privilege against

self-incrimination. The defendant may not be called to the stand in a criminal case unless he waives his privilege. He cannot be charged with a waiver of the privilege unless it appears that he was aware of its existence and its surrounding safeguards and voluntarily and intelligently elected to refrain from asserting it.''

These principles also have been held to apply to proceedings which were not technically criminal prosecutions. In *State* v. *Clifford,* 86 Iowa 550 [53 N.W. 299, 41 Am.St.Rep. 518], defendant, while under arrest and in jail charged with larceny, was brought before the grand jury and interrogated without being informed of his rights or that his answers could be used against him. This was held to violate his privilege against self-incrimination. In *State* v. *Meyer,* 181 Iowa 440 [164 N.W. 794], the defendant, a murder suspect, was called before a coroner's jury and questioned. In ruling that his privilege was violated, the court said that ''if it appears that a coroner's jury is sitting to investigate the cause of the death of one whose death is suspected to have been the result of foul play, and the one who is suspected of being implicated in the crime is summoned or subpoenaed to appear before the jury and give testimony, and is sworn to tell the truth, and is not informed of his right to refuse to testify, and is not provided with counsel, and is compelled, or believes he is compelled, to answer questions propounded to him by the coroner, or by those assisting in the investigation, his answers so given cannot be said to be voluntary. . . .'' (181 Iowa at 450. See also *State* v. *Harriott,* —— Iowa —— [79 N.W.2d 332, 335].)

■ It is axiomatic that a person may waive the privilege against self-incrimination. But any such waiver ''must be informed and intelligent. There can be no waiver if the defendants do not know their rights.'' (*Wood* v. *United States,* 128 F.2d 265, 277 [75 App. D.C. 274, 141 A.L.R. 1318].) In *People* v. *O'Bryan,* 165 Cal. 55 [130 P. 1042], defendant was brought before the grand jury for interrogation with respect to a crime of which he was accused. The court stated that since defendant was ''sworn and examined without the aid of counsel, and without any instruction as to his rights, it cannot be said that his submission to the interrogation was in any fair sense voluntary.'' (P. 62.)

■ Applying these principles to the cases before the court, it is clear that the judgments holding petitioners guilty of contempt must be annulled. ■ By requiring petitioners,

who were without the aid of counsel, to testify without advising them of their constitutional rights, the court violated their privilege against self-incrimination. And petitioners cannot be said to have waived their privilege since such waiver must be "informed and intelligent" in order to be voluntary. (*Wood* v. *United States, supra.*)  We must assume petitioners were ignorant of their constitutional rights since they were not advised thereof by either court or counsel.

 "When a defendant has been denied any essential element of a fair trial or due process, even the broad saving provisions of section 4½ of article VI of our state Constitution cannot remedy the vice and the judgment cannot stand." (*People* v. *Sarazzawski*, 27 Cal.2d 7, 11 [161 P.2d 934].)  "It is an essential part of justice that the question of the guilt or innocence shall be determined by an orderly legal procedure, in which the substantial rights belonging to defendants shall be respected." (*People* v. *O'Bryan, supra*, p. 65. See also *People* v. *Sarazzawski, supra*; *People* v. *Black*, 150 Cal.App.2d 494, 503 [310 P.2d 472].)

In view of the foregoing it is unnecessary to consider other questions raised by counsel.

The judgment in each case is annulled.

Ashburn, J., and Richards, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.