# STATE OF CONNECTICUT *v.* PAUL AGRESTA[*]

## APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No CR 2-28767

Argued January 22—decided March 15, 1968

[*] Appeals in the following cases in the Circuit Court in the second circuit were combined with the present appeal: No. CR 2-28768, State v. *John Aquilante;* No. CR 2-28770, State v. *Anthony Cesero;* No. CR 2-28771, State v. *Frank Cesero;* No. CR 2-28773, State v. *Vincenzo Cicero;* No. CR 2-28774, State v. *Pat A. Conte;* No. CR 2-28775, State v. *Anthony Crudele;* No. CR 2-28776, State v. *Gaetano Furnari;* No. CR 2-28777, State v. *Peter M. Genova;* No. CR 2-28778, State v. *George Kapich;* No. CR 2-28779, State v. *Carmen F. Lupulio;* No. CR 2-28780, State v. *Carl A. Melisi;* No. CR 2-28781, State v. *Matthew Michaels;* No. CR 2-28783, State v. *Giovanni Picirillo;* No. CR 2-28784, State v. *Anibal N. Pinguelo;* No. CR 2-28785, State v. *Anthony Procce;* No. CR 2-28786, State v. *Louis Spetrino;* No. CR 2-28788, State v. *Christy Testo;* No. CR 2-28789, State v. *Jerry Vecchione.*

*Henry B. Rothblatt,* of New York, N.Y., a member of the New York bar, with whom, on the brief, was *Richard W. Pinto,* of Bridgeport, for the appellants (defendants).

*Arnold Markle,* chief prosecuting attorney, for the appellee (state).

JACOBS, J.   All the defendants were found guilty of the crime of frequenting a gambling house[1] in violation of § 53-274[2] of the General Statutes, after a jury trial, and took appeals.   The motion of the parties that the appeals should be combined and consolidated for the purposes of appeal to this court and that the judgment of this court would be conclusive upon all the defendants was granted by the trial court.   See Practice Book §§ 606, 677; *Bahr Corporation* v. *O'Brion,* 146 Conn. 237, 239; *State* v. *Mazzadra,* 141 Conn. 731, 732; Maltbie, Conn. App. Proc. §§ 286, 291.   Since the issues involved in these appeals are identical and the cases were all argued together, a single opinion will suffice.

---

[1] The informations in these cases use the word "gambling." The statute (§ 53-274) uses the word "gaming." "The word 'gaming' is synonymous with gambling." *Farina* v. *Kelly,* 147 Conn. 444, 448; see 2 Wharton, Criminal Law (12th Ed.) § 1741; 38 C.J.S. 51 n.25, Gaming, § 1 (d) (1).

[2] "Sec. 53-274. GAMING HOUSE; FREQUENTERS. Any person who enters, except for a legitimate purpose, a place resorted to for the purpose of gaming, or which is reputed to be a gaming house or place frequented for the purpose of gaming, shall be deemed to be a frequenter thereof and shall be subject to the penalties provided in section 53-273" (§ 53-273 provides for a penalty of not more than $100 or imprisonment for not more than six months or both).

The defendants have pressed a number of assignments of error on these appeals which we need not, and we do not, consider.

We direct our attention to the preliminary hearing. The record as certified to us (Practice Book § 960) discloses the following facts: The defendants were arrested on March 12, 1967, upon informations charging them with frequenting a gambling house in violation of § 53-274. They retained John T. Cullinan, a member of the Bridgeport bar, to defend against the criminal prosecutions. On April 19, 1967, the court (Naruk, J.) advised the defendants before plea of their rights. General Statutes § 54-1b. They pleaded not guilty and elected trial by jury. The cases were continued to May 2, 1967, and thence to May 24, 1967. Meanwhile, on May 10, 1967, at a preliminary hearing held at Bridgeport, the court (Cicala, J.) was informed that the defendants had decided to engage new counsel, Henry B. Rothblatt, a member of the bar of New York, in place of Attorney Cullinan. Upon being so advised, the court inquired of new counsel if he "would mind if each one of these [defendants] took the witness stand and indicate to the court that they have retained you [Attorney Rothblatt] and that they intend that you will represent each and everyone of them throughout these proceedings whether it takes a day or a month or whether they are all tried together or individually." Attorney Rothblatt made it clear to the court that "we are calling them [the defendants] just for the limited purpose of indicating their desire for me to represent them."

The record shows that the court's interrogation went beyond the limited inquiry to determine the question of legal representation; the interrogation covered a wide ranging inquiry into matters calling for answers which could be perilous because injuri-

ous disclosure might result.[3]  And when counsel attempted to interpose an objection to the court's interrogation into matters outside the terms of the waiver, the court said: "I am indicating to you [Attorney Rothblatt] that you are not in this case." At one point during the interrogation, one of the witnesses while on the witness stand asked of the court, "Sir, could I have the advice of my counsel?" This request was renewed at least three times.[4]  In our view of the preliminary hearing, the defendants were boxed in a paradox.[5]  A lawyer who was recognized as their counsel for the purpose of waiving a privilege was not recognized as their counsel for the purpose of protecting the privilege.

---

[3] There was considerable wrangling between the court and one defendant and counsel which comprised some forty pages of the transcript.  During the interrogation of this witness by both court and prosecuting attorney, he was ordered to disclose facts and circumstances over and beyond the waiver. He was asked to give the names of his acquaintances, the place and the date where they had met, and the purpose of the meeting. We are to remember that the defendants had been the object of more than casual interest by the prosecution.  Obviously, it was perilous for this witness to answer, for, if he acknowledged such acquaintances, it may have directly connected him with the codefendants and possibly other crimes.  "Indeed, perhaps in the end we should say no more than that the chase must not get too hot; or the scent, too fresh." *United States* v. *Weisman,* 111 F.2d 260, 263. "[I]n determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry." *United States* v. *Coffey,* 198 F.2d 438, 440.

[4] While on the witness stand, a defendant asked the court for permission to consult with his lawyer on at least three different occasions; these requests went by unheeded and the interrogation continued.  "Only one conclusion can be drawn from this renewed request for counsel. . . . [The witness] at this point either realized the seriousness of the hearing for the first time, or was misled at the outset as to what his right to counsel was." *Application of Sullivan,* 126 F. Sup. 564, 575.

[5] Although Attorney Cullinan was not given permission to withdraw as counsel for the defendants at the commencement of the preliminary hearing, the court inquired of Attorney Rothblatt, not of Attorney

Our Connecticut constitution (1965) by § 8 of article first provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . . No person shall be compelled to give evidence against himself . . . ." See General Statutes § 54-84. "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. Amend. VI. "The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours." *Gideon* v. *Wainwright,* 372 U.S. 335, 344. "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He requires the guiding hand of counsel at every step in the proceedings against him." *Powell* v. *Alabama,* 287 U.S. 45, 68, 69. Moreover, a defendant's right to be heard through his own counsel is unqualified. *Chandler* v. *Fretag,* 348 U.S. 3, 9. "A defendant in a criminal case has a right to counsel at every stage of the proceeding." *United States* v. *Wilson,* 133 F. Sup. 664, 665. "The right to counsel is such a basic and fundamental right as to require its uniform availability to those accused of crime in both state and federal courts." *Application of Sullivan,* 126 F. Sup.

Cullinan, whether it might call each defendant to the witness stand for the limited purpose of inquiring under oath whether each defendant had decided to engage new counsel. The transcript of this preliminary hearing consumed some seventy-five pages, during all of which time neither Attorney Cullinan nor Attorney Rothblatt participated in the proceeding. As a matter of fact, Attorney Cullinan told the court almost at the very outset: "I am not representing these people, as I have indicated to Your Honor." Attorney Rothblatt, as noted previously, was not recognized by the court as counsel for the defendants other than when he agreed to let them be interrogated.

564, 570, rev'd on other grounds, 227 F.2d 511, cert. denied, 350 U.S. 973; see *Ex parte Lee,* 123 F. Sup. 439, 443, aff'd, 217 F.2d 647, cert. denied, 348 U.S. 975.

In the instant cases, none of the defendants was actually or in any meaningful sense permitted by the court to be represented by counsel at the preliminary hearing, yet there can be no doubt that the criminal prosecution had commenced and the defendants were, at all times thereafter, entitled to have the assistance of counsel for their defense. *White* v. *Maryland,* 373 U.S. 59, 60; *Hamilton* v. *Alabama,* 368 U.S. 52, 54. "More than a mere token appearance by an attorney on behalf of a defendant is required to satisfy the constitutional right to counsel. A defendant is entitled to the effective and substantial aid of counsel at all stages of the proceeding." *People* v. *Karlin,* 231 Cal. App. 2d 227, 231; see *Harvey* v. *United States,* 215 F.2d 330, 332 (dissenting opinion). The defendants here were before the court under the compulsion of an arrest upon a criminal charge; in these circumstances, they may well have believed it was their duty to testify when called to the witness stand. "When a defendant goes to trial upon a charge of a criminal nature without the benefit of counsel, it is the duty of the court to be alert to protect the defendant's rights. Good practice requires that any suggestion by the court that the defendant take the stand be coupled with advice as to his privilege against self-incrimination. The defendant may not be called to the stand in a criminal case unless he waives his privilege. He cannot be charged with a waiver of the privilege unless it appears that he was aware of its existence and its surrounding safeguards and voluntarily and intelligently elected to refrain from asserting it." *People* v. *Chlebowy,* 191 Misc. 768, 772 (N.Y.); *People* v. *Morett,* 272 App. Div. 96, 98 (N.Y.);

*Cochran* v. *State,* 117 So. 2d 544, 546 (Fla. App.);
*People* v. *Kramer,* 227 Cal. App. 2d 199, 202; see
*State* v. *Lucas,* 24 Conn. Sup. 353, 356, 1 Conn. Cir.
Ct. 591, 593; 3 Wharton, Criminal Evidence (12th
Ed.) § 722, p. 19; 2 Underhill, Criminal Evidence
(5th Ed.) § 355, p. 892; note, 79 A.L.R.2d 643. We
take this occasion to point out that the defendants
had the assurance of the court that the interroga-
tion would be for a strictly limited purpose; elemen-
tary fairness requires that they should not be misled
on that score. The court went beyond the waiver.

We do not turn this "criminal appeal into a quest
for error"; *Johnson* v. *United States,* 318 U.S. 189,
202 (concurring opinion); rather, we find no justifi-
cation for limiting the historic protection afforded
those accused of crime. It is not our function to
assess the practical possibility of prejudice which
resulted from the court's interrogation; indeed, such
an assessment would be impossible for us to make.
"To determine the precise degree of prejudice . . .
is . . . difficult and unnecessary. The right to have
the assistance of counsel is too fundamental and
absolute to allow courts to indulge in nice calcula-
tions as to the amount of prejudice arising from its
denial." *Glasser* v. *United States,* 315 U.S. 60, 75.

The denial of the right to assistance of counsel
at the preliminary hearing was prejudicial; accord-
ingly, the convictions cannot stand. In view of our
conclusion as to this claim, consideration of the re-
maining claims is unnecessary.

In reversing the convictions, we are not called
upon to decide, nor do we decide, whether the evi-
dence was sufficient to sustain the judgment of
guilty. On the contrary, we have restricted our
review to a determination of whether the prelimi-
nary hearing was held in accordance with procedural
due process. We have determined that it was not.

There is error, the judgments are set aside and a new trial is ordered.

In this opinion KINMONTH and MACDONALD, Js., concurred.