535 A.2d 951

**Thomas Eugene MARTIN,**

v.

**STATE of Maryland.**

**No. 542, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Jan. 13, 1988.

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, M. Kenneth Long, State's Atty. for Washington County and Andrew G.W. Norman, Asst. State's Atty. for Washington County, on the brief), Hagerstown, for appellee.

Submitted before WILNER, BISHOP and ROSALYN B. BELL, JJ.

WILNER, Judge.

In *Stevens v. State*, 232 Md. 33, 192 A.2d 73, *cert. denied* 375 U.S. 886, 84 S.Ct. 160, 11 L.Ed.2d 115 (1963), the Court of Appeals concluded that it was not "essential for the protection of a defendant's constitutional rights that he be advised by the court of his right against self-incrimination when he is represented by counsel." *Id.*, 39, 192 A.2d 73. We said the same thing in *State v. McKenzie*, 17 Md.App. 563, 303 A.2d 406 (1973).

Both courts intimated, however, that where the defendant is proceeding without counsel, the trial court did have some duty in this regard. In *Stevens*, the Court cited an Annotation appearing in 79 A.L.R.2d 643 (1961) for the proposition that "[m]ost jurisdictions which have considered the point have held that failure by a trial court to advise a defendant

not represented by counsel of his right to refuse to take the witness stand constitutes prejudicial error." 232 Md. at 39, 192 A.2d 73.[1] In *McKenzie*, we examined the cases cited in the A.L.R. Annotation and observed that:

> "the requirement upon the judge to give a warning to an unrepresented defendant, is aimed at protecting the defendant from *compulsory* self-incrimination. Defendants should not be called to the stand by the prosecutor or the judge; nor should they be led to believe that they are required or expected to take the stand. The Annotation, and its supporting cases, say no more than this. The single sentence in *Stevens* which summarizes this point should not be read carelessly or overbroadly, cut loose from the moorings of its supporting authority."

17 Md.App. at 593, 303 A.2d 406.

As the defendant in both *Stevens* and *McKenzie* was indeed represented by counsel and was called to testify by his attorney, these observations as to the court's duty when dealing with an unrepresented defendant were in the nature of *dicta*. We now have the case of an unrepresented defendant and the issue of just what kind of advice, if any, the trial judge must give him.

Appellant was charged in the Circuit Court for Washington County with unlawful possession of controlled paraphernalia—a hypodermic syringe. The syringe was discovered in a pickup truck being driven by appellant.

Appellant waived his right to counsel and elected to proceed *pro se*. At the conclusion of the State's case, the court addressed him: "Mr. Martin, if you wish to testify, you must come up and be sworn. You are under no obligation to do so and it will not be held against you if you do not."

---

1. Compare *State v. Lashley*, 21 N.C.App. 83, 203 S.E.2d 71 (1974); *State v. Poindexter*, 69 N.C.App. 691, 318 S.E.2d 329 (1984); *State v. Aanerud*, 374 N.W.2d 491 (Minn.App.1985); *Wright v. State*, 285 S.W.2d 762 (Tex.Cr.App.1955); and *State v. Lucas*, 24 Conn.Supp. 353, 190 A.2d 511 (1963), holding that there is no duty on the part of the court to inform an unrepresented defendant of his right to remain silent.

Without further colloquy, appellant took the stand and gave his version of the event. Essentially, his story was that he was helping a friend move some furniture and was unaware that the syringe was in the truck. On cross-examination, the prosecutor attempted to impeach appellant's credibility by showing an earlier conviction for possession of marijuana with intent to distribute.

The jury obviously did not believe appellant's protestation of innocence, for it found him guilty, whereupon the court imposed a sentence of four years imprisonment. The sole question presented for review is whether the court denied him due process of law "when it failed to properly advise him of the consequences of his election to testify." He argues, in particular, that, at a minimum, the court was obliged to inform him that (1) "if he took the witness stand, he could be impeached," and (2) the jury would be instructed as to the presumption of innocence if he elected not to testify. Absent this advice, he claims, his waiver of his right to remain silent cannot be regarded as knowing and intelligent.

We have been referred to no case, nor are we aware of one, that supports appellant's thesis.

At one time, this Court was of the view that, under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), it was incumbent upon a trial court, before accepting a plea of guilty, to inform the defendant specifically that such a plea constitutes a waiver of his Fifth Amendment right against self-incrimination. In that regard, and in that context of accepting a guilty plea, we had, on one occasion, suggested that the trial judge inform the defendant "not only that his failure to testify may not be used as a basis for comment against him but also that it may not be used as an inference to be weighed on the issue of guilt." See *Davis v. State*, 28 Md.App. 50, 58, 343 A.2d 550 (1975). It is important to note, however, that (1) even in that extended view of *Boykin*, we never suggested that the defendant had to be informed about his subjection to cross-

examination and impeachment if he testified, (2) we made clear in *Davis* that failure to inform the defendant that no inference could be drawn from his silence "does not constitute reversible error where, as here, the constitutional privilege against self-incrimination has been adequately identified and verbalized in non-technical language," *id.,* 58, 343 A.2d 550, and (3) the Court of Appeals, reviewing our *Davis,* concluded that *Boykin* did not require specific reference to the right against self-incrimination in the first instance. See *Davis v. State,* 278 Md. 103, 361 A.2d 113 (1976).

As the *Stevens* Court noted, a number of appellate courts throughout the country have concluded that a trial court should inform an unrepresented defendant of his right to remain silent before allowing him to testify and that failure to do so can (or will) amount to prejudicial error. This rule was first invoked in cases where some element of compulsion was found—where the court made some remark intimating that the defendant *should* testify or where the prosecutor called him as a State's witness and no one informed him that he did not have to testify. See, for example, *People v. Chlebowy,* 191 Misc. 768, 78 N.Y.S.2d 596 (S.Ct. Erie Co. 1948); *People v. Morett and Holm,* 272 A.D. 96, 69 N.Y.S.2d 540 (1947); *State v. Blosser,* 158 W.Va. 164, 207 S.E.2d 186 (1974); *State v. Agresta,* 5 Conn.Cir. 242, 250 A.2d 346 (1968); *Killpatrick v. Superior Court,* 153 Cal.App.2d 146, 314 P.2d 164 (1957); *Cochran v. State,* 117 So.2d 544 (Fla.App.1960). But it has also been applied where there was no such coercion—where, at the neutral invitation of the court, the defendant volunteered to testify. See *R.V.P. v. State,* 395 So.2d 291 (Fla.App.1981); *People v. Kramer,* 227 Cal.App.2d 199, 38 Cal.Rptr. 487 (1964); *People v. Solomos,* 83 Cal.App.3d 945, 148 Cal.Rptr. 248 (1978), and other California cases cited therein.

The basis of the rule in either situation is that a defendant may not be called to the stand unless he waives his privilege against compelled self-incrimination and that "[h]e cannot be charged with a waiver of the privilege unless it appears that he was aware of its existence and its surround-

ing safeguards and voluntarily and intelligently elected to refrain from asserting it." *People v. Chlebowy, supra,* 78 N.Y.S.2d at 600; *State v. Agresta, supra,* 250 A.2d at 349; *State v. Blosser, supra,* 207 S.E.2d at 189. This underpinning of the rule is unimpeachable. The Fifth Amendment right against self-incrimination is regarded as one of the "fundamental" Constitutional rights, to which the *Johnson v. Zerbst* waiver standard is applicable, i.e., "an intentional relinquishment or abandonment of a known right...." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Curtis v. State,* 284 Md. 132, 143, 395 A.2d 464 (1978). Under this standard, it is clear that a defendant cannot waive a right of which he has no knowledge. For a court to find a valid waiver in the case of an unrepresented defendant, therefore, the record must show that the defendant was informed of the right; ordinarily, that advice will have to come from the trial judge.

■ For these reasons, we now clearly hold that, before permitting an unrepresented defendant to testify, the court must inform the defendant of his correlative Constitutional rights to testify or avoid the prospect of compelled self-incrimination by declining to testify.

The question then becomes, how much should the court say? How far should the court go?

No case has been cited to us, nor are we aware of one, requiring anything more than was told to appellant here, that he had a right to remain silent and that it would "not be held against" him if he did so. Every reversal in this area, of which we are aware, involved a situation in which nothing at all was said to the defendant. Conversely, in *State v. Johnson,* 354 N.W.2d 541 (Minn.App.1984), the Court found no error when the unrepresented defendant was informed, at the outset of the trial, "that he had a right to remain silent at trial and at pre-trial proceedings." *Id.,* 542. And in *State v. Morford,* 192 Neb. 412, 222 N.W.2d 117, 118 (1974), the Court found sufficient the trial court's advice to the unrepresented defendant that he "had a right

not to testify but could do so if he wished, and that if he did, he would be subject to cross-examination and would waive his right to remain silent."

There must be a sense of balance here. Trial judges are commanded by both Constitutionally-based case law and specific rules of procedure (see Md.Rule 4–215) to inform unrepresented defendants of their right to counsel, to encourage them to obtain counsel, and to warn them of the hazards of proceeding without counsel. If a defendant knowingly and voluntarily elects to disregard that advice and proceed without counsel, he cannot expect the judge to become his lawyer. Informing him that he has a right not to testify and that no inference of guilt can be drawn if he exercises that right suffices, we think, to allow him to make an intelligent—if not a wise—decision whether to testify. To go further, however, might involve the court, however subtly, in influencing that decision.

Appellant argues that he was entitled to know that, if he testified, he "could be impeached," but what would that tell him? Counsel, of course, would presumably know of any prior inconsistent statements given by the defendant and of any criminal convictions that might be used for impeachment purposes. He would consider what the defendant would say if he testified, how he might hold up under cross-examination by the prosecutor, and the nature and extent of any inconsistency between the expected testimony of the defendant and other evidence in the case, and develop some approximation of his overall credibility. From all of this, counsel could gauge the prospect of impeachment in a meaningful way, weigh it against the effect of leaving the State's evidence unrebutted by the defendant's testimony, and advise the defendant accordingly. The trial judge obviously cannot be expected to do all that. Absent that kind of analysis, however, a simple warning of "impeachment" will, at best, be meaningless and might well prove to be misleading or threatening. Laying out in any significant detail the range of hazards faced by a defendant who subjects himself to cross-examination by a skillful prosecu-

**604**

tor can very easily chill a defendant's desire to tell his side of the story; too brief a summary, conversely, can lure à defendant into dreadful self-incrimination.

▆ We think that the trial court here, however tersely, told appellant all that it was required to tell him, and we therefore find no error.[2]

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

**2.** It is worth noting, to dispel any notion that appellant was a complete babe in the woods, that in a court appearance on September 23, 1986—one week before his trial—appellant was specifically informed by another judge that, among his rights,

"[Y]ou have the right to take the witness stand in your own defense. I would point out to you that you have a choice. If you choose to take the witness stand, you would [be] subject, like any other witness, to testifying under oath, and be subject to cross examination. If you would choose not to take the witness stand, you cannot be compelled to, and the Court would instruct the jury that no inference of guilt arises because you choose not to testify."

Appellant conveniently neglects to mention this advice in complaining about the alleged denial of due process of law.