229 N.J. Super. 531 (1989)
552 A.2d 200
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PATRICK DWYER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 15, 1988.
Decided January 6, 1989.
*533 Before Judges PRESSLER, SCALERA and STERN.
Wolff, Helies & Duggan, attorneys for appellant (John Peter Duggan, on the brief).
John Kaye, Monmouth County Prosecutor, attorney for respondent (Mark P. Stalford, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant appeals from his convictions on two counts of simple assault, N.J.S.A. 2C:12-1a. The convictions followed a trial on cross complaints filed in the Manalapan Township Municipal Court. We reverse and remand for a new trial.

*534 I.
Defendant filed complaints charging Joseph and Paul Giuliano with criminal trespass, N.J.S.A. 2C:18-3, and several motor vehicle violations. The Giulianos also filed complaints against defendant alleging two counts of simple assault, N.J.S.A. 2C:12-1a, two counts of harassment, N.J.S.A. 2C:33-4, and four counts of disorderly conduct, N.J.S.A. 2C:33-2. The events leading to the cross complaints followed the arrest of the Giulianos by defendant, an off duty New Jersey State trooper.
Defendant testified that while at home on the afternoon of February 8, 1987, he observed two persons operating all terrain vehicles (hereinafter ATVs, although called ATCs at trial) on his land. After observing the ATVs again about five minutes later, defendant immediately endeavored to follow and locate the trespassers in his truck. He discovered the Giulianos on their ATVs a short distance from his home. When he endeavored to arrest them, a confrontation and scuffle ensued.
At trial there was a factual dispute as to whether the Giulianos had operated their ATVs on defendant's property, when defendant identified himself as a police officer and how much force he used in endeavoring to arrest the Giulianos. Ultimately, defendant was able to force or get both Giulianos into his truck and transport them to the Manalapan Police Station. The cross complaints were subsequently filed.[1]
The cross complaints were tried before the Manalapan Township Municipal Judge on May 19 and June 2, 1987. The Giulianos were represented by counsel, who indicated he was representing them "with respect to the charges lodged against them and prosecuting the charges lodged in turn against Mr. Dwyer *535 ...". In response to questions posed by the judge at the outset of the trial, defendant indicated that he was representing himself, that he had "no problem in that regard," that he had had an opportunity to retain counsel and that he was voluntarily acting as his own attorney. When the Giulianos' attorney indicated to the judge that defendant had filed his complaints "first in point of time," the following colloquy occurred:
THE COURT: All right. Mr. Dwyer, we'll hear you first. Mr. Dwyer, you can take the stand and we'll hear your complaints first. In order to hear the whole story at once, even though it's a little awkward, I would like to hear the basis of the complaints that you took out against Mr. Paul and Mr. Joseph Giuliano, as well as, whatever you want to tell me with respect to their complaints against you. Okay?
MR. DWYER: As long as I can provide anything 
THE COURT: Yeah, sure. (Indiscernible) to say anything they want to say.
Defendant then testified as to the facts related to the charges he filed against the Giulianos and, at least to some degree, their complaints against him. On his direct testimony, defendant testified that he "grabbed" the Giulianos and indicated that they "struggled." The cross-examination included questions about defendant's efforts to arrest the Giulianos.
After defendant finished his testimony, he indicated that he had no other witnesses on his case. Defendant indicated that he was resting his case unless his wife was available to testify at the next session, and the court indicated that he would give defendant the opportunity to call her at that time. After the court reserved decision on defendant's motions for judgment of acquittal or dismissal, the court recessed.
When proceedings commenced approximately two weeks later, defendant moved to dismiss his complaints against the Giulianos under N.J.S.A. 39:3-10 and 39:3-29, because his research revealed no need for a driver's license for an ATV. After discussion of other matters, defendant indicated that his wife was in the hospital and asked only to introduce into evidence a tax map which was entered as a joint exhibit. Defendant noted thereon the location where he claimed the ATVs had been operated.
*536 Thereafter, defendant again indicated that his case had been completed, and the court called upon the Giulianos' attorney to proceed. The attorney immediately called defendant as a witness. The record reflects the following:
THE COURT: Okay. All right. That being the case, [Giulianos' attorney], I think you're up.
[GIULIANOS' ATTORNEY]: I call Patrick Dwyer.
THE COURT: You're calling the complainant?
[GIULIANOS' ATTORNEY]: I'm calling Mr. Dwyer. He's complainant, cross defendant, however you want to call him.
THE COURT: Okay.
FEMALE VOICE: Please be seated. State your name.
MR. DWYER: I'm Trooper Patrick Dwyer, stationed at Holmdel Barracks.
THE COURT: All right. Before we proceed, since you're being called as a witness on the Giulianos case, Mr. Dwyer, we're going to treat you as a hostile witness.
MR. DWYER: Okay.
THE COURT: And under those circumstances, [the Giulianos' attorney], since he's calling you as his witness, can ask you questions which would normally not be within the purview of a witness that somebody calls on their own behalf. Okay. With that admonition you can proceed, ....
The Giulianos' attorney thereupon questioned defendant on much of the subjects previously covered, but he did so as the prosecuting attorney in the case against defendant. In his direct testimony defendant again admitted that he "grabbed a hold" of the collar or lapel of Joseph Giuliano. Thereafter, the Giulianos and their father testified about the events and their injuries and condition after the scuffle.
The court found the evidence insufficient to conclude that the Giulianos were the trespassers on defendant's property and acquitted them on all counts. The trial judge also found that defendant was acting as a private citizen and had no right to detain or arrest the Giulianos. He also found, in any event, that defendant unlawfully assaulted both Giulianos and was also guilty of disorderly conduct by creating a dangerous condition. Defendant was acquitted of the disorderly conduct charges related to offensive language. Fines, costs and penalties for the benefit of the Violent Crimes Compensation Board were imposed with respect to each conviction.
*537 On trial de novo in the Law Division defendant, then represented by counsel, was again convicted of the assault charges, but the judge dismissed the charges involving harassment and disorderly conduct. The same fines, costs and penalties were imposed on the assault convictions following the trial de novo as were imposed in the Municipal Court. R. 3:23-8(e).

II.
First, we do not understand the municipal court judge's reference to defendant as a "hostile witness" because he was not uncooperative and did not testify in an unexpected manner. See State v. Hogan, 137 N.J.L. 497, 501 (Sup.Ct. 1948) aff. o.b. 1 N.J. 375 (1949); see also State v. Ross, 80 N.J. 239, 252 (1979) and subsequent amendments to Evid.R. 20, 63(1)(a); State v. Gross, 216 N.J. Super. 98 (App.Div.) certif. den. 108 N.J. 194 (1987); State v. Curtis, 195 N.J. Super. 354, 370 (App.Div.) certif. den. 99 N.J. 212 (1984). While the trial judge's declaration that defendant was "hostile" may be attributable to some prejudgment as to his credibility, we do not pursue that question, or the legal principles relating to the contention that defendant's actions were justified as a police officer, in light of our disposition on other grounds.

III.
More importantly, the record before us does not reflect any advice by the municipal court judge, either to the parties on these cases or to defendants generally at the outset of these particular proceedings, of their right not to testify.[2] In fact, *538 with the exception of the questions asked of defendant concerning whether he elected to represent himself, the record before us contains no information about advice of any kind. We find significant the fact that defendant, as a pro se party, was called to testify as the Giulianos' witness in their case against him, and that he so testified independent of his testimony on the complaints filed by him against the Giulianos.
Although the cases were tried together, cf. R. 7:4-2(f), we do not have to decide whether a complainant must be advised at the outset of proceedings that he need not testify when he is the subject of a cross complaint or counter complaint, after voluntarily filing charges against another. See N.J.S.A. 2A:84A-19; Evid.R. 25(d); see also N.J.S.A. 2A:84A-17 to -18; Evid.R. 23-24. Nor need we consider any issue regarding the requirement for such warnings if the cross or counter complaint against defendant had been disposed of before he testified.[3] Here, although the subject matter of defendant's testimony related to his complaints and the transaction involved therein, defendant was improperly called by the prosecuting attorney in the case against him, and the judge did nothing to warn defendant of his right not to testify at that time. We therefore hold that, absent appropriate warnings by the trial judge and waiver by defendant of his rights not to testify against himself, defendant's conviction must be reversed *539 because he was called by the prosecuting attorney as a witness on the case against him.
In State v. Bogus, 223 N.J. Super. 409 (App.Div. 1988), we recently held that a trial judge has no obligation to inform a defendant who is represented by counsel of his right not to testify. Id. at 426. In that opinion we quoted from Wharton's Criminal Practice, § 396 (Torcia 12th ed. 1975):
Absent an applicable statute providing otherwise, neither the trial judge nor the prosecuting attorney is required to warn a witness or the defendant of his privilege against self-incrimination, except that the trial judge may in his discretion impart such a warning. However, where the defendant is not represented by counsel, the trial judge is ordinarily required to inform him of his right not to take the stand. [223 N.J. Super. at 423]. (Emphasis added).
Several state and federal courts have, however, recognized the constitutional right of a pro se defendant to be advised by the trial judge of his right not to testify. See, e.g., United States ex rel. Santana v. Fenton, 570 F. Supp. 752, 759 (D.N.J. 1981), rev'd on other grounds, 685 F.2d 71 (3d Cir.1982), cert. denied 459 U.S. 1115, 103 S.Ct. 750, 54 L.Ed.2d 968 (1983); R.V.P. v. State, 395 So.2d 291, 293 (Fla.Dist.Ct. of App. 1981); People v. Cundle, 98 Cal. App.3d Supp. 34, 159 Cal. Rptr. 806, 807-808 (Cal.Super. 1979); People v. Jackson, 88 Cal. App. 490, 151 Cal. Rptr. 688, 691-693 (Ct.App. 1978); People v. Wells, 261 Cal. App.2d 468, 68 Cal. Rptr. 400, 408 (Ct.App. 1968); State v. Agresta, 5 Conn.Cir. 242, 250 A.2d 346, 349 (Cir.Ct. 1968); Cochran v. State, 117 So.2d 544, 545-547 (Fla. Dist. Ct. App. 1960); People v. Morett, 272 A.D. 96, 69 N.Y.S.2d 540, 541 (App.Div. 1947). See also Annotation. "Duty of Court to Inform Accused Who Is Not Represented By Counsel of His Right Not to Testify," 79 A.L.R.2d 643. We agree with the principle and adopt it in this setting.
A defendant always has the right to retain counsel, but counsel will be assigned to an indigent on a non-indictable offense only if he faces actual imprisonment or other consequence of magnitude. See Rodriquez v. Rosenblatt, 58 N.J. 281, 295 (1971); compare Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Despite the distinction *540 with respect to the right to counsel between indictable and non-indictable offenses in this respect, the obligation of a trial judge to advise a pro se defendant of his right not to testify has been applied to disorderly persons and non-indictable offenses as well as indictables. See People v. Chlebowy, 191 Misc. 768, 78 N.Y.S.2d 596, 599-602 (N.Y. Sup. Ct. 1948); People v. Morrett, supra. See also Killpatrick v. Superior Court, 153 Cal. App.2d 146, 314 P.2d 164 (Ct.App. 1957) (contempt). We need not consider the distinction further, however, because in any event, R. 7:4-4(d) requires the municipal court judge to advise a "defendant of his or her rights prior to hearing." These rights have been interpreted to include the right not to testify, see Report of the Supreme Court Committee on Municipal Courts, 118 N.J.L.J. 119 (1986), and the record before us reflects no such advice.
Although not argued before us, we have considered application of the harmless error doctrine as it has been employed in some circumstances involving the failure of a trial judge to advise a pro se defendant of his right not to testify. See and compare, e.g., People v. Cundle, supra, 159 Cal. Rptr. at 807-808; People v. Wells, supra, 68 Cal. Rptr. at 408-409; State v. Agresta, supra, 250 A.2d at 349-350; Cochran v. State, supra, 117 So.2d at 547; see also People v. Poindexter, 69 N.C. App. 691, 318 S.E.2d 329 (Ct.App. 1984) (finding no duty to so advise defendant who waived his right to counsel and, in any event, harmless error); People v. Torres, 133 Cal. App.3d 265, 184 Cal. Rptr. 39 (Ct.App. 1982) (finding error harmless). We conclude, however, that the harmless error doctrine should not be applied in a case such as this involving so fundamental an error as the prosecutor calling the defendant to the stand on the State's case in the absence of any advice of defendant's rights to the contrary by the trial judge. Independent of the Fifth Amendment's right against self-incrimination, under Evid.R. 23(1) an accused has a right "not to be called as a witness and not to testify." N.J.S.A. 2A:84A-17(1). See also N.J.S.A. 2A:84A-18; Evid.R. 24; N.J.S.A. 2A:84A-16; Evid.R. *541 2; State v. DeCola, 33 N.J. 335, 342-344 (1960).[4] We might feel differently if the judge on the trial de novo had disregarded the defendant's testimony on the Giulianos' complaints. Here, however, the Law Division held that defendant
waived any right not to testify by initially testifying in this matter to begin with. He was cross-examined and from his knowledge as a state trooper he knew that he had the right not to take the witness stand when he did testify in this matter in full as to all the circumstances.
We expressly reject the contention that because defendant was a police officer, he was aware of his rights and, therefore, waived his right not to testify against himself. See, e.g. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).
Accordingly, we reverse defendant's conviction on the simple assault charges. Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The record reflects five complaint-summons, numbers S451692 and S451694 filed against defendant by Paul Giuliano, S451693 filed against defendant by Joseph Giuliano, S451695 filed by defendant against Paul Giuliano, and S451697 filed by defendant against Joseph Giuliano. Despite the statement on the record at trial that defendant filed his complaints before the Giulianos, it appears that the opposite is true.
[2] The State has advised us that the judge advised it that he addresses all defendants of their rights at the outset of proceedings before the "arrival of the court stenographer" and that defendant was present to hear Miranda warnings given. The State refers to a transcript including a prior session of February 17, 1987 in that respect. That transcript was not furnished to the Law Division on trial de novo and has not been presented to us. In any event, even if there was appropriate advice given at the outset of all proceedings, it should have been repeated at least before defendant was called to the stand by the Giulianos' attorney.
[3] We recognize that cases may be consolidated. See R. 7:4-2(f). With respect to a cross complaint on indictable offenses, the County Prosecutor has the opportunity to review the matter upon reference to him and to exercise prosecutorial discretion, including the grant of immunity with respect to one or more defendants. See N.J.S.A. 2A:81-17.3. When non-indictable offenses are related to indictables, all complaints are referred to the County Prosecutor so that there is no disposition of one matter which could impact on the ability to prosecute the other in advance of prosecutorial review. See State v. DeLuca, 108 N.J. 98, 111 (1987); State v. Dively, 92 N.J. 573, 589-590 (1981).
[4] Because of the distinction between Evid.R. 23(1) and the privilege against self-incrimination, this situation may be distinguished from a case where a defendant on a cross-complaint testifies on direct and cross-examination as complainant on his case. See e.g., State v. Morales, 138 N.J. Super. 225 (App. Div. 1975); State v. McMahon, 183 N.J. Super. 97 (Law Div. 1981). See also N.J.S.A. 2A:84A-19, -29; Evid.R. 25(d); 37. This is not the occasion to discuss waiver in the context of filing the original complaint or a cross-complaint.